PAUL A. BONIN, Judge.
Un his seventh amending and supplemental petition, Dana Johno, the appellant, asserted three claims against Scottsdale Insurance Company, the appellee. Only one of those claims, however, is before us on this appeal. Mr. Johno, as the purported assignee of Leon Duplessis & Sons, Inc., (“Duplessis”) asserts a bad-faith.failure-torsettle claim against Scottsdale. Scottsdale filed a partial peremptory exception of no right of action to this specific claim. The trial judge sustained the partial exception and dismissed this claim of Mr. Johno.
■ In support of the trial judge’s ruling, Scottsdale argues that the Release executed between Mr. Johno and Duplessis, from which the purported assignment of the claim is derived, is unambiguous and does not assign any bad-faith failure-to-settle claim against Scottsdale. We have reviewed the Release, which of course is a contract between the parties, de novo and conclude as a matter of law that Duplessis did not therein assign Mr. Johno its bad-faith failure-to-settle claim against Scottsdale. Accordingly, we. affirm the trial judge’s sustaining the partial |2exception and dismissing the specific claim for bad-faith failure-to-settle claim against Scottsdale.
We explain our decision below.
I
A
Dana Johnd owned a rental home, damaged during Hurricane Katrina in 2005, which according to him was demolished without his consent. Leon Duplessis & Sons, Inc. had a contract with Plaquemines Parish Government for demolition and debris removal. In addition to suing them, Mr. Johno also sued two subcontractors, Hard Rock Construction and Pro Tree Services as well as their insurer, Scottsdale Insurance Company.
During the course of the litigation, Mr. Johno settled with Duplessis and Plaque-mines Parish. He learned around the time of the settlement that Scottsdale, who allegedly insured Duplessis, refused to participate in settlement negotiations.
As part of his settlement with Duplessis, Mr. Johno and Duplessis executed a Release. The full title of the Release is “Confidential Settlement Agreement and Release.” Additional parties and signatories to the Release are Plaquemines Parish and The Hanover Insurance Company. The Release generally provided for payment to Mr. Johno by Duplessis, Plaque-mines Parish and Hanover and his release of “any and all claims” he may have against them.[1] The term “claims” is comprehensively defined in the Release. The Release also provided an assignment [¡¡to Mr. Johno of some but not all of Duplessis’ “contractual rights” against Hard Rock and Scottsdale.
Upon the completion of the execution of the Release, Mr. Johno filed his seventh amending and supplemental petition. In that petition, he advanced three claims against Scottsdale. One of the claims h'e advanced was that Scottsdale was liable to him personally for its bad-faith failure to settle his own claim. The trial judge sustained a partial peremptory exception of no cause of action as to that claim and dismissed it.[2] Mr. Johno has not assigned error to that ruling and the issue presented by the exception is not before us. Another of the claims advanced by Mr. Johno against Scottsdale is as the assignee of *583 Duplessis (by virtue of the Release) for Duplessis’ indemnity claim under the policy of insurance. Scottsdale has not challenged Mr. Johno’s right to assert Duples-sis’ indemnity claim and thus this claim too is not before us.
B
The third claim advanced is, however, before us on our review of the sustained partial exception of no right of action. When, as here, we are presented with an exception of no right of action under La. C.C.P. art. 927 A(6), we assume for the purposes of deciding the exception that the petition states a Valid cause of action. See J-W Power Co. v. State ex rel. Dept. of Revenue, 10-1598, p. 7 (La.3/15/11), 59 So.3d 1234, 1239; Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com’n, 646 So.2d 885, 888 (La.1984). This claim, a bad-faith failure-to-^settle claim, arises under La. R.S. 22:1973.[3] A cause of action for a bad-faith failure-to-settle under Section 1973 is only available to Mr. Johno if he is advancing Duplessis’ claim as assigned to him. See Kelly v. State Farm, Fire & Cas. Co., 14-1921, p. 6 (La.5/5/15), 169 So.3d 328, 333.
In the trial court, Scottsdale excepted to Mr. Johno’s right to assert'Duplessis’ bad-faith failure-to-settle claim against it on two distinct grounds. First, Scottsdale contended that because such bad-faith failure-to-settle claim, which it ^characterizes as a strictly personal right, was not first asserted by Duplessis in a lawsuit before any assignment, the claim was not assignable and thus Mr. Johno could not be the assignee., And, second, Scottsdale contended that the Release itself unambiguously did not grant any assignment of Duplessis’ bad-faith failure-to-settle claim even if it could be assigned.
*584 The trial judge accepted Scottsdale’s first contention and did not reach its second. He sustained the partial exception and dismissed the bad-faith failure-to-settle claim advanced by Mr. Johno. Mr. Johno appealed the ruling.[4] We review the ruling de novo. See Caceras v. Work, 12-1097, pp. 3-4 (La.App. 4 Cir. 2/27/13), 110 So.3d 275, 278.
We pause to emphasize that it is the ruling itself, and not the trial judge’s stated reasons for his ruling, that we are reviewing for correctness. See Wooley v. Lucksinger, 09-0571, 09-0584, 09-0585, 09-0586, pp. 77-78 (La.4/1/11), 61 So.3d 507, 572 (Because reasons for judgment form no part of a judgment and we review judgments, “[judgments are often upheld on appeal for reasons different from those assigned by the district judges.”). And, because Scottsdale was the prevailing party in the trial court, it is not limited to the reasons given by the trial judge in support of its position but may rely on any argument supported by the [¿record. See La. C.C.P. art. 2133 B (“A party who does not seek modification, revision, or reversal of a judgment in an appellate court ... may assert, in support' of the judgment, any argument supported by the record, although he has not appealed, answered the appeal, or applied for supervisory writs.”); Cusimano v. Port Esplanade Condominium Ass’n, Inc., 10-0477, p. 3 (La.App. 4 Cir. 1/12/11), 55 So.3d 931, 935.
Because we agree with Scottsdale that the Release is unambiguous, as we discuss in Part II, post, and that Duplessis. does not assign its bad-faith failure-to-settle claim against Scottsdale to Mr. Johno, we conclude that the ruling is correct and thus need not further consider the basis on which the trial judge based his ruling.
II
The Release is the law between Mr. Johno and Duplessis. See La. Civil Code art.1983. ‘When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” La. Civil Code art. 2046. And “[w]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law.” Sims v. Mulheam Funeral Home, Inc., 07-0054 p. 10 (La.5/22/07), 956 So.2d 583, 590; Louisiana Ins. Guar. Ass’n v. Interstate Fire & Cas. Co., 93-0911 p. 7 (La.1/14/94), 630 So.2d 759, 764 (“The determination of whether a contract is 17clear or ambiguous is a question of law.”). The interpretation of this contract, then, is a question of law. Wooley, p. 56, 61 So.3d at 558.
Here, Mr. Johno argues that there is a broad assignment of rights, which although it admittedly does not expressly specify the assignment of the bad-faith failure-to-settle claim is sufficiently broad to include it. And, it is true, that the assignment of rights portion of the Release, if read in isolation from the remainder of the Release, would appear to be broad and nearly all-encompassing. But, *585 of course, we do not read any single contractual provision in isolation. See La. Civil Code art. 2050 (“Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.”).
The assignment of rights portion of the Release is set forth below (capitalized terms are those which the Release specifically defines in its definitions portion):
Except as specifically stated herein, DUPLESSIS agrees to assign to RE-LEASOR [Mr. Johno] all contractual rights DUPLESSIS has or may have against HARDROCK, its subcontractors and their insurers, including but not limited to, the indemnity claims asserted by DUPLESSIS in the DEMAND and any additional rights DUPLESSIS has or may have under the HARDROCK CONTRACT, to the fullest extent allowed under Louisiana law, except DU-PLESSIS and HANOVER specifically reserve their rights to recover past, present, and future defense costs, with DUPLESSIS and HANOVER remaining in the LITIGATION only to the extent necessary for RELEASOR [Mr. Johno] to pursue the herein assigned indemnity claim and for DUPLESSIS and HANOVER to recover its past, present and future defense costs, (emphasis added)
We have emphasized at the outset the provisions “all contractual rights,” which include “indemnity claims” as well as “any additional rights” under “the IsHARDROCK CONTRACT” so as to contrast them with Mr. Johno’s argument that these contractual rights encompass a bad-faith failure-to-settle claim. It is settled that a bad-faith failure-to-settle claim arises not from the contract of insurance itself but rather from an insurer’s violation of its statutory duties under La. R.S. 22:1973. See Wegener v. Lafayette Ins. Co., 10-0810, p. 12 (La.3/15/11), 60 So.3d 1220, 1229; Durio v. Horace Mann Ins. Co., 11-0084, p. 18 (La.10/25/11), 74 So.3d 1159, 1170 (The duties of an insurer under the statute “are separate and distinct from its duties under the insurance contract.”). And we detect no provision in the plain words of the assignment of rights which purports to assign the statutory (as opposed to contractual) claim.
The indemnity claim, clearly assigned to Mr. Johno, and the obligation-to-defend claim (defense costs), clearly reserved by Duplessis, are, on the other hand, quintessential claims arising from the contract of insurance, especially when contractual liability is assumed. See, e.g., Suire v. Lafayette City-Parish Consol. Government, 04-1459, pp. 18-19 (La.4/12/05), 907 So.2d 37, 51-52. Barton Protective Services, Inc. v. Coverx Corp., 615 So.2d 438, 441-442 (La.App. 4th Cir.1993).
We do not, and cannot, assume that the absence of an explicit assignment of its bad-faith failure-to-settle claim by Duples-sis should be construed as an ambiguity in the Release. Elsewhere (in the definitions section) in the Release, the terms “CLAIM” or “CLAIMS” are defined. And, importantly, these terms as defined in the contract itself are only used in the assignment of rights provision with the modifier “indemnity.” As defined in the Release, a “CLAIM” or “CLAIMS” includes demands or causes of action whether arising out of tort, contract, statute, regulation, or otherwise, including contractual claims, | jiextracontractual claims, claims for indemnity, claims for insurance coverage, and claims for violation of any code, statute, including but not limited to claims under La. R.S. 22:1973 (formerly 22:1220), statutory or contractual penal *586 ties, and bad faith damages.[5]
We should note that Mr. Johno released Duplessis from all his “claims” against it. But Duplessis in the Release simply did not assign its “claims” against Scottsdale to Mr. Johno. • Duplessis only assigned some of its contractual rights, | inprimarily its (contractual) right to seek indemnity from its insurer for', the settlement it paid to Mr. Johno.
Thus, as defined by the contract itself, a “claim” includes “contractual rights” such as a “claim for indemnity” or a claim for costs of defense, but the terms “claim” and “contractual rights” are not thereby interchangeable. And, as the Release makes plain, the parties were amply able to clearly express that among the claims for which Mr. Johno was releasing Duplessis and Hanover was the bad-faith claim under Section 1973. Yet nowhere in the Release, and certainly not in its assignment of rights portion, is there any mention of assigning such comparable claims that Du-plessis may have against Scottsdale.
Therefore, we find that the Release, which is the contract between.Mr. Johno and Scottsdale, is unambiguous and must be enforced as written. Because Mr. Joh-no is not the assignee of Duplessis’ bad-faith failure-to-settle claim under Section *587 1973 against Scottsdale, he may not advance or exercise Duplessis’ right of action. See Kelly, 14-1921, p. 6, 169 So.3d at 333. And, on that account, the'trial judge was correct in sustaining Scottsdale’s partial exception of no right of action. ■
DECREE
The ruling sustaining the partial exception of no right of action filed by Scottsdale Insurance Company, dismissing Dana Johno’s bad-faith failure-to-settle' claim, is affirmed.
AFFIRMED
TOBIAS, J., dissents and assigns reasons.
BAGNERIS, J., dissents.

. Mr. Johno also agreed to dismiss with prejudice his lawsuit against the released parties.

. See Theriot v. Midland Risk Ins. Co., 694 So.2d 184, 193 (La.1997).

. La. R.S. 22:1973 provides:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insüred or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach,
B. Any one of the following acts, if knowingly 'committed or performed by an insurer, constitutes a breach of the insurer’s duties imposed in Subsection A of this Section:
(1) Misrepresenting pertinent facts or insurance policy provisions relatihg to any ' coverages at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
(3) Denying coverage or attempting to settle a claim on the, basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
(4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
(6) Failing to pay claims pursuant to R.S. 22:1893 when such failure is arbitrary, capricious, or without probable cause.
C. In-addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by thé insurer in computing either past or prospective'loss experience for the.purpose of setting rates or making rate filings.
D. The provisions of this Section shall not be applicable to claims made under health and accident insurance policies.
E. Repealed by Acts 1997, No. 949, § 2.
F. • The Insurance Guaranty Association Fund, as provided in R.S. 22:2051 -et seq., shall not.be liable for any special damages awarded under the provisions of this Section.

. The trial judge designated his judgment sustaining a partial exception as final for the purpose of an appeal. See La. C.C.P. art. 1915 B(l). But because the trial judge did not give any reasons supporting his determination that “there is no just reason for delay” in taking an appeal on this limited issue, we have considered the matter de novo under applicable factors. See R.J. Messinger, Inc. v. Rosenblum, 04-1664, pp. 13-14 (La.3/2/05), 894 So.2d 1113, 1122. We prefer, however, that trial judges, who are more familiar with the relative importance of a particular partial judgment to the overall proceedings, give an explanation of why multiple appeals and piecemeal litigation is appropriate at the time of designating the partial judgment appeal-able.

. We quote the full definition of "CLAIM” or "CLAIMS” set forth in the Release:
"CLAIM” or "CLAIMS” shall mean any .and all past, present and future claims, demands, obligations, requests, actions, suits, proceedings, losses, damages, liens, adAiinistrative proceedings, governmental .actions, and causes of action, whether arising out of tort, contract, statute, regulation or otherwise, including but not limited to those for negligence, intentional tort, property damage, lost rents, lost income, loss of property, loss of use, claims for violation of civil rights under the United States Consti- . tution, Amendments and , Statutes, Louisiana Constitution, Amendments and Statutes, deprivation of due process, taking without compensation, intentional, malicious and [reckless], behavior and gross negligence in failing and refusing [to investigate] the ownership of the home and failing to notify-Johno of the intent to destroy his property, failing to follow procedures in the demolition process, violation of rights under LSA Constitution Article 12, See 3 and La R.S. 44:31, et seq., malicious, intentional, and reckless and grossly negligence production of incomplete and/or false and/or misleading and/or fraudulent infor- ' mation, failing to supervise, altering and/or expurgating files, delayed production of documents, failure to properly. investigate and supervise demolitions, destroying/demolishing property belonging to others, claims for failure to properly train employees; claims for failure to supervise; claims . for failure to properly inspect; claims for failure to provide appropriate warnings, claims based on respondeat superior or vicarious liability, claims based on res ipsa loquitur, claims for properly damage, past, present, and future lost rental, claims for past, present, and future mental pain and suffering, claims for punitive or exemplary damages, strict liability claims, absolute liability claims, property damage, claims, bodily injury claims, contractual claims, extra-contractual claims, claims for indemnity, claims for insurance coverage, claims for violation of any code, statute, rule regulation, -or law, including but not limited to claims . under La. C.C. arts. 1996, 1997. 1998, 2315 et seq., 2316, 2317, 2317.1, 2318, 2320, U RS, 22:1892 (formerly 22:658), and La. R.S. 22:1973 (formerly 22:1220), claims for attorney fees, interest, expert witness fees, court costs, statutory or contractual penalties, fees, expenses, bad faith damages, claims to enforce rights under the POLICY, claims to enforce rights under the CONTRACT, and any. other claims for damages or relief at law. or in equity, under any theory of recovery whatsoever, in any way arising out of, connected with, or relating to the allegations and/or events forming the basis of the LÍTIG ATION and/or the wrongful demolition of the RED HOUSE, or any other damage, loss, cost or expense of any kind or nature whatsoever whether presently known or unknown, filed or unfiled, asserted- or as yet unasserted, which exists or may in the future exist[.]