Judge Edwin A. Lombard
hThe Appellant, Hugh Uhalt,[1] seeks review of three district court judgments in *399 the instant appeal: a January 26, 2016 judgment dismissing respondeat superior claims against Appellee, J.P. Morgan Chase & Co. f/k/a Bank One Corporation (“Bank One”); a February 4, 2016 judgment dismissing his remaining claims against Bank One; and a March 23, 2016 judgment granting an exception of res ju-dicata of Appellee John Ohle, III (“Ohle”). Finding that the judgment of the district court granting Ohle’s exception of res judi-cata is neither manifestly erroneous nor legally incorrect, we affirm. Moreover, pursuant to our de novo review, we find that there are no genuine issues of material of fact precluding the granting of Bank One’s respective motions for summary judgment. Lastly, Bank One’s Answer to Appeal is denied as moot.
FACTS AND PROCEDURAL HISTORY
The facts of this matter were previously set forth in Ames v. Ohle, 11-1540 (La.App. 4 Cir. 5/23/12), 97 So.3d 386, as follows:
lain 1998, plaintiff, Ecetra N. Ames, hired defendant, John B. Ohle, III, to provide tax and financial planning services.[2] Ohle was employed by defendant, Bank One, from 1999 through 2002 in the bank’s Innovative Strategies Group.[3] In December 1999, Ames executed an instrument establishing a Charitable Remainder Unitrust (“Trust”), which designated Ohle as trustee.[4] Ames asserts that she initially funded the trust with almost $5 million, followed by contributions in almost $3 million over the next two years. Ames alleges that in 2001, Mr. Ohle approached her about investing in a hedge fund called Carpe Diem Dynamic Fund Linked Warrants (“Carpe Diem Warrants”). Ames agreed to invest $5 million in Carpe Diem Warrants. After the $5 million transfer was made, Ames alleges that Ohle instructed the Carpe Diem fund to withhold $250,000 as a fee for the purchase of the warrants. Ames asserts that, she was not informed that there would be any fees for the purchase of the Carpe Diem Warrants. ' Ames asserts that at the same time Ohle purchased $4.75 million worth of Carpe Diem Warrants on Ames’s account, he transferred $2 million of the Trust’s funds to purchase additional Carpe Diem Warrants. This transfer involved a fee of $100,000, which Ames asserts was not disclosed to her.
Ames also asserts that defendant, Douglas Steger, at the direction of Ohle, directed the Carpe Diem fund to send $300,000 of the $350,000 of fees collected by Ohle to the bank account of Invested Interest, a company based in San Francisco, . California and wholly owned by Individual “A.” Ames’s petition states that Individual “A” is an unnamed, non-defendant co-conspirator, who is an investment advisor and friend of Ohle. Ames asserts that ■ on November 27, 2001, Ohle directed $347,834 to be transferred from the Trust to Carpe Diem. Subsequently, Ohle directed Carpe Diem to send the $347,834 in funds to Invested Trust. Ames alleges that Individual “A”, at the direction of Ohle, through several transactions sent a total of $375,000 of her money to a bank account owned by Kenneth Brown and his. then wife at Gulf Coast Bank. Ames further alleges *400 that another $267,634 of her money was transferred to a bank account owned by Ohle at l.gHibernia Bank. Ames asserts that she had no knowledge of these transactions.
Ames alleges that Ohle and Brown used the funds improperly deducted from Ames’s Carpe Diem investment to fund Brown’s position as a third-party investor in the “Hedge Option Monetization of Economic Remainder” (“HOMER”), which is a tax strategy sold by Ohle and Bank One to high net-worth individuals. Ames further alleges that Ohle, Brown, and Bank One received significant income from their roles with regard to the HOMER tax strategy. Specifically, Ames asserts that Bank One received over $5,000,000 in fees for referring its clients to the HOMER strategy.[5]
In March 2003, Ames requested that Ohle provide her with an accounting for the Trust. Ames asserts that Ohle falsely told her that $350,000 in fees was paid entirely to Steger. After learning, in August 2003, of Ohle’s mishandling of the Trust, Ames and Ohle executed a settlement agreement. However, Ames asserts that the accounting did not apprise her of the following: money taken from the Trust that was funneled through Carpe Diem; the withdraws by Ohle from the Trust; or the use of Carpe Diem fees and Trust funds to fund the HOMER tax strategy.
In 2008, Ohle was indicted by a grand jury in the Southern District of New York for various fraud and tax offenses. Ames asserts that it was within the course of Ohle’s criminal trial that she discovered for the first time that Ohle benefited from the $350,000 of fees she and the Trust were charged for the purchases of Carpe Diem Warrants. In addition, Ames also asserts that it was at this time that she first learned of Ohle’s $347,834 transfer from the Trust to Carpe Diem to fund the HOMER tax strategy. In June 2010, Ohle was found guilty as charged.
After further details of Ohle’s mishandling of Ames’s Trust were disclosed throughout Ohle’s criminal trial, in October 2009, Ames filed suit against the same defendants in the instant case ha federal court alleging claims under RICO as well as several state law claims. Ames v. Ohle, 2010 WL 5055893, p. *2 (E.D.La.2010). The federal court dismissed Ames’s RICO claims as untimely based on the “injury discovery” rule, which [¿determines when a RICO claim accrues. Id. at *2, *4..., Further, the federal court declined to exercise jurisdiction over Ames’s remaining state law claims since the only federal law claims were dismissed at an early stage of the litigation. Id.
On January 14, 2011, Ames filed her petition in this suit. Bank One filed multiple exceptions, including exceptions of preemption, prescription and no cause of action, which were adopted by the other defendants, Brown and Steger. The district court sustained Bank One’s exception of prescription by oral ruling on May 27, 2011.
Ames v. Ohle, 11-1540, pp. 1-5 (La.App. 4 Cir. 5/23/12), 97 So.3d 386, 389-90, decision clarified on reh’g (July 11, 2012), writ denied, 12-1832 (La. 11/9/12), 100 So.3d 837.
In the above-referenced appeal, Mrs. Ames sought review of the district court’s *401 grant of Bank One’s exception of prescription. We reversed in part the portion of the district court’s judgment “sustaining Bank One’s exception of prescription as to her [Mrs. Ames’s] claim for fraud” and remanded for further proceedings. In all other respects, the grant of the exception of prescription was affirmed. On rehearing, we clarified that Mrs". Ames’s fraud claim “is personal in nature” and is subject to a ten-year prescriptive period. Id.
Subsequently, Ohle filed exceptions of prescription and res judicata. The district court granted the exception of res judicata dismissing Mrs. Ames’s claims against Ohle, with prejudice. Bank One also filed a motion asserting that it was entitled to summary judgment on the following issues: not being a proper party defendant, respondeat superior, fraud, and civil conspiracy. The district court ultimately granted Bank One’s motion for summary judgment in full.
Mr. Uhalt timely filed the instant appeal. He raises four assignments of error:
[1. The district court erred in granting Ohle’s exception of res judicata on the basis of a prior settlement agreement that'was reached through his fraudulent concealment of the information that forms the basis of Mr. Uhalt’s claims in this'matter.
2. The district court erred in granting summary judgment to Bank One on the issue of Ohle’s employment status, finding as a matter of law that he was employed by ors Corporation (“BOIA”) rather than Bank One, where voluminous evidence shows a genuine dispute of material fact as to Bank One’s employment of Ohle.
3. The district court erred in granting summary judgment to Bank One on Mr. Uhalt’s respondeat superior ■ "claims, on the basis of a lack of benefit to Bank One from Ohle’s conduct, -where the evidence shows a genuine issue of material fact regarding the benefit received by Bank One.
4.The district court erred in granting summary judgment to Bank One on Mr. Uhalt’s direct fraud claims against Bank One, where there is evidence in the record showing a genuine dispute of material fact regarding Mrs. Ames’s reliance on Bank One’s role as an investment advisor and regarding what actions Mrs. Ames would have taken had Bank One warned her of Ohle’s wrongful actions.
Exception of Res Judicata
In his first assignment of error, Mr. Uhalt argues that his claims of fraud against Ohle are not barred by the exception of res judicata and the terms of the 2003 Settlement Agreement. He avers that the Settlement Agreement was only applicable to “all matters disclosed;” however, the claims at issue were unknown to Mrs^ Ames at the time she executed the Settlement Agreement. Ohle, according to Mr. Uhalt, failed to meet his burden of showing that the Settlement Agreement barred the instant claims. He further asserts that it is undisputed that Ohle “concealed the information” underlying Mrs. Ames’s petition from both her and her attorney, John Wogan, when the Settlement Agreement was created. Her petition raises claims that she learned of after entering into the Settlement | (¡Agreement, during the course, of Ohle’s indictment and federal criminal proceedings, according to Mr. Uhalt. Mr. Uhalt further argues that in addition to its fraud claims against Ohle, Mrs. Ames did not learn of Bank One’s misconduct until after the Settlement Agreement was executed.
Moreover, Mr. Uhalt asserts that even if the Settlement Agreement is determined *402 to be applicable to .the issues raised in Mrs. Ames’s Petition, she was fraudulently induced by Ohle into signing the Settlement Agreement. Thus, the contract may be vitiated by fraud, , he contends. Tate v. Woman’s Hosp. Found., 10-425, p. 5 (La. 1/19/11), 56 So.3d 194, 198; La. Civ. Code art. 1948. He also argues that Bank One is precluded from relying on the Settlement Agreement because neither Bank One nor any of its affiliated entities were released.
Appellate courts review of a peremptory exception of res judicata “to determine if the trial court’s decision is legally correct or incorrect.” BBCL Enterprises, LLC v. Am. Alternative Ins. Corp., 15-0469, p. 3 (La.App. 4 Cir. 2/3/16), 187 So.3d 65, 67 (quoting Myers v. Nat’l Union Fire Ins. Co. of Louisiana, 09-1517, p. 5 (La.App. 4 Cir. 5/19/10) 43 So.3d 207, 210. Additionally, “[w]e review factual issues relating to an exception of res judicata on a manifest error/clearly wrong basis.” Id. (quoting Countrywide Home Loans Servicing, LP v. Thomas, 12-1304, p. 3 (La.App. 4 Cir. 3/20/13), 113 So.3d 355, 357).
We note that at the time the parties entered into the Settlement Agreement, Ohle was still the trustee of the Trust. He resigned from that position as a condition of the Settlement Agreement. In addition to the Settlement Agreement, a consent judgment was later issued by the district court. Furthermore, Mrs. Ames was repre-' sented by counsel and acting under the advice of her counsel when she signed the Settlement Agreement. Ohle asserts that despite still being the trustee, |7he did not retain a position of influence or trust over Mrs. Ames as the parties were adversaries at that juncture. The Settlement Agreement, he argues, is all inclusive covering all of his actions up to, the date that the Settlement Agreement was executed.
The district court explained during the January 15, 2016 hearings that it was granting the-exception because the parties entered into a global release and that the Settlement Agreement resulted from the parties “no longer having a relationship of trust.”
We further note that at said hearing, counsel for Mr. Uhalt admitted that the Settlement Agreement was indeed a global release. The Settlement Agreement states that Mr. and Mrs. Ames agreed to:
Hereby discharge and forever release John B. Ohle, III, his heirs, successors, agents, employees, attorneys and assigns of and from any and all liability and all claims and demands or any nature or kind, whether in law or in equity, whether or not now known, whether growing out of tort, contract or otherwise, including without limitation all obligations and liability resulting in any manner from (i) the administration of the Écetra N. and Anthony M. Ames 1999 Charitable Remainder Unitrust by John B. Ohle, III as trustee and fully release, discharge and acquit John Ohle of any further responsibility in connection with the Ecetra N. and Anthony M. Ames 1999 Charitable Remainder Uni-trust subject to his delivery to the duly appointed successor trustee of all cash and every item of property held by John B. Ohle, III, as trustee of the Ecetra N. and Anthony M. Ames 1999 Charitable Remainder Unitrust and to which the Trust is entitled, and (ii) professional and/or personal services of John B. Ohle, III, rendered to'Ecetra Nippert Ames and Anthony M. Ames, or either one of them, at any time up to and including the date of this Agreement. [Emphasis added.]
Moreover, the 2004 Consent Judgment states in pertinent part that:
*403 IJT IS HEREBY ORDERED, ADJUDGED AND DECREED, that the accounting of the entire administration of the Anthony M. and Ecetra N. Ames 1999 Charitable Remainder Unitrust by its Trustee, John Brewster Ohle, III, more fully set forth in Exhibit “B” to the Petition filed in the record of this, proceeding is hereby approved in accordance with LSA R.S. 9:2088, and such accounting shall be conclusive against a beneficiary of the trust with respect to all matters disclosed in suck accounting, with all costs of these proceedings to be borne by Petitioner. [Emphasis added].
“A compromise precludes ■ the parties from bringing a subsequent action based upon the matter that was compromised.” La. Civ. Code art. 3080. Our Court has previously explained the binding nature of a compromise on those who were parties to it:
A compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised. La. C.C. art. 3080. This preclusive effect of a compromise can be raised in a peremptory exception, under Louisiana Code of Civil Procedure Article 927. See La. C.C. art. 3080, part (a)'of Revision Comments—2007. A valid compromise may form the basis of a plea of res judicata. Rein v. Edwards, 921 So.2d at 1160, citing Rivett v. State Farm Fire Cas. Co., 508 So.2d 1356, 1359 (La.1987)[6] ; see also Brown v. Drillers, Inc., 93-1019 (La. 1/14/94), 630 So.2d 741. A release executed in exchange for consider-ration is a compromise. Brown v. Drillers, Inc., 630 So.2d at 741.
Contogouris v. Ocean Therapy Sols., LLC, 15-0472, p. 7 (La.App. 4 Cir. 1/27/16), 187 So.3d 18, 22, writ denied, 16-0367 (La. 4/15/16), 191 So.3d 591.
Based upon our review of the Settlement Agreement, which we read in pari materia with the Consent Judgment, we find that the district court did,not err in granting Ohle’s exception of res judicata. The wording of the Settlement Agreement lucidly states that Ohle is released’ of liability for claims regardless of |flwhether they were known of when the settlement was executed. This wording precludes Mr. Uhalt’s argument that Mrs. Ames- later learned of additional misconduct committed by Ohle.
Regarding Mr/ Uhalt’s argument involving the accounting provision-in the Consent Judgment, the record reveals that Mrs. Ames and her counsel, Mr. Wogan, were aware of questionable transactions that appeared in the provided accounting, but chose not to inquire about them prior to entering into the Settlement Agreement .[7]
Mr. Wogan testified that a CPA firm reviewed the final accounting of the Trust. He further testified that he had reservations about the documentation that Ohle provided prior to executing the Settlement Agreement, and that he advised Mrs. Ames of this. He further relayed being suspicious of Ohle fabricating statements, and being dissatisfied with the sufficiency of documentation he had received in order to properly advise Mrs. Ames on the Settlement Agreement and the Consent Judg *404 ment. He testified that he advised Mrs. Ames of his reservations and her options. It was their joint decision to enter into both the Settlement Agreement and the Consent Judgment and to not pursue further investigation, according to Mr. Wog-an.
As Mr. Uhalt maintains, consent may be vitiated by fraud, which is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Tate, 10-0425, p. 5, 56 So.3d at 198 (citations omitted). However, despite ImOhle’s failure to be forthcoming, we do not find that his omissions resulted in an unjust advantage for himself or caused a loss or inconvenience to Mrs. Ames, as he was responsible for the mismanagement of the funds from the Trust evident in the accounting, regardless of whether he bene-fitted from unexplained transactions. Thus, we find that the district court properly determined that the Settlement Agreement and Consent Judgment formed a valid compromise precluding Mr. Uhalt from pursuing additional claims against Ohle. This assignment of error is without merit.
Remaining Issues Raised on Summary Judgment and Standard of Review
Mr. Uhalt’s remaining assignments of error involve the district court’s grant of summary judgment on whether: Ohle was an employee of Bank One; respondeat superior applies; and Bank One committed direct fraud. .
Pursuant to La. Code Civ. Proc. art. 966(A)(2), a motion for summary judgment is designed to secure the just, speedy, and inexpensive determination of an action. A motion for summary judgment shall be granted when there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. Code Civ. Proc. art. 966(A)(3). Although the burden of proof rests with the mover, if the mover does not bear the burden of proof at trial on the issue before the court, the mover need only point out an absence of factual support for one or more elements of the adverse party’s claim, action, or defense. La. Code Civ. Proc. art. 966 (D)(1), The burden then shifts to the adverse party “to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.” La. Code Civ. Proc. art. 966 (D)(1). If the adverse party fails to establish that a genuine issue of material fact exists, the mover is entitled to summary judgment as a matter of law. |n/d. Appellate courts review summary judgments de novo using the same standard that the district court applies: determining whether a genuine issue of material fact exists. Encalade v. A.H.G. Sols., LLC, 16-0357, p. 9 (La.App. 4 Cir. 11/16/16), 204 So.3d 661, 666 (citations omitted). In the instant matter, Bank One, the defendant in the matter, did not carry the burden of proof at trial on these claims; thus, it need only to point out an absence of factual support for one or more elements of the adverse party’s claim, action, or defense.
Ohle’s Employment and the Respon-deat Superior Claim
We will combine our discussion of Mr. Uhalt’s second and third assignments of error as both involve whether an employment relationship existed between Ohle and Bank One.
Mr. Uhalt avers that Ohle was an employee of Bank One, and it is a proper defendant in the instant matter. Thus, he argues the district court erred in granting Bank One’s motion for summary judgment on the issue of it being a proper party in this matter.
*405 He further argues that the district court erred in granting Bank One’s motion for summary judgment finding that Bank One was not vicariously liable for Ohle’s fraud. He maintains that there is a genuine issue of material fact as to whether Bank One benefitted from Ohle’s misconduct. He argues that the district court erroneously held that Bank One did not benefit from Ohle’s misconduct because Bank One bene-fitted by having Ohle, and other employees, target high-asset clients—like Mrs. Ames—to propose wealth management strategies in order for it to have assets to manage. Mr. Uhalt relies on the testimony of Mike Reed, a corporate representative of Bank One, who testified that Ohle’s compensation was |12based upon a measurement of the total assets he secured for any of Bank One’s entities. Mr. Uhalt specifies ways that Bank One benefited from Ohle’s actions:
1. It received millions of dollars in referral fees and fees related to its role in consummating the HOMER transactions resulting from Ohle’s diversion of funds from the Trust; and,
2. It monitored and exercised control over Trust-related matters and deferred to Ohle in administering the assets of the Ames family.
Ohle, Mr. Uhalt argues, was supported by Bank One in his endeavors as it allowed him to host meetings for the Ames family at Bank One; did not bill Mrs. Ames for work done by Bank One; allowed Ohle to administer the Trust from Bank One; and used its letterhead and other materials while working on projects for the Ames family.
Although Mr. Uhalt emphasizes that the district court reasoned that Bank One did not benefit from Ohle’s actions, our focus is on the Judgment itself.[8] Thus, the issues presented for our de novo review are whether there is a genuine issue of material fact as to whether Ohle was a Bank One employee and whether Bank One is liable under the respondeat superi- or doctrine for his fraudulent actions.
Bank One’s motion for summary judgment was supported by a substantial amount of testimony that Ohle was never an employee of Bank One, but of BOIA. His direct supervisor at BOIA, Harry Dye, III, testified to this fact, as well as Peter Atwater, the CEO of BOIA. Additionally, Joni McCabe, a compliance manager at Bank One, also testified that BOIA is a subsidiary of Bank One. There is also | ^documentation in the record reflecting BOIA is a separate corporation, such as a form from the Ohio Secretary of State showing BOIA amended its Articles of Incorporation. Moreover, although the November 23, 1999 offer letter to Ohle is on Bank One stationery, and references Bank One, the letter specifies BOIA as the entity for which Ohle would work: “John, we look forward to you playing an important role within Banc One Investment Advis-ors.” Lastly and most conclusive, BOIA’s name appears on Ohle’s W-2s. In light of the aforementioned evidence, we conclude that BOIA was Ohle’s employer. Therefore, there is no genuine issue of material fact as to whether Bank One was a proper party defendant.
Furthermore, regarding Mr. Uhalt’s respondeat superior claim, we recognize that it is the employer’s right to control an employee’s actions that is the linchpin of determining vicarious liability *406 for. an employee’s tortious acts. Recently, in Knoten v. Westbrook, 14-0892, pp. 13-14 (La.App. 4 Cir. 5/18/16), 193 So.3d 380, reh’g denied (05/31/16), writ denied, 16-1260 (La. 10/28/16), 208 So.3d 890 we explained:
Generally, employers are vicariously liable for the. torts of their employees.” Gumpert v. Pittman Const. Co., 98-2269, p. 6 (La.App. 4 Cir. 6/9/99), 736 So.2d 1026, 1031. “The premise of vicarious liability is codified in La. Civ. Code art. 2320, which provides an employer is há-ble for the tortious acts of its ‘servants and overseers in the exercise of the functions in which they are employed.’ ” Richard v. Hall, 2003-1488, p. 5 (La. 4/23/04), 874 So.2d 131, 137.
The essence of the employer-employee relationship is the right to control. Id. at p. 8, 4 So.3d at 920. The primary factors evidencing the right to control are: (1) selection and engagement, (2) payment of wages, (3) power of dismissal, and (4) power of control. Id., citing Hillman v. Comm-Care, Inc., 2001-1140, p. 8 (La.1 15/02), 805 So.2d 1157, 1162. “[T]he courts have reasoned that none of the factors is controlling, that the totality of the | ^circumstances must be considered, and that the burden of proof is on the party seeking to establish an employer-employee relationship.” Hillman, 2001-1140 at p. 9, 805 So.2d at 1163.
As discussed above, however, we do not find that Bank One was Ohle’s employer. Furthermore, as the district court correctly noted, pursuant to Louisiana law a parent company, such as Bank One, is not liable for the acts of its subsid-iaries. There is an exception when there is proof that “the parent company knew of and approved those actions.” Andry v. Murphy Oil, U.S.A., Inc., 05-0126, p. 15 (La.App. 4 Cir. 6/14/06), 935 So.2d 239, 249-250 [subsequent procedural history and citations omitted]. In order to establish the liability of the parent company, a plaintiff must demonstrate that the parent company controlled the operations of the subsidiary:
The parent corporation may be liable for the obligations of its subsidiary when it controls the operations of the subsidiary. Oracle 1031 Exchange, LLC v. Bourque, 85 So.3d 736 (La. Ct. App. 3d Cir. 2012) (subsidiary and parent considered single business enterprise);[9] Amoco Production Co. v. Texaco, Inc., 838 So.2d 821 (La. Ct. App. 3d Cir. 2003). But a court will not lightly assume that a parent has accepted that obligation absent proof of an affirmative undertaking by the parent corporation. Bujol v. Entergy Services, Inc., 922 So.2d 1113 (La. 2004).
James S. Holliday, Jr., Rick J. Norman, and Dale R. Baringer, 1 La. Prac. Corp. § 9:180 (2016-2017 ed.)(fn. added).
|1fiWe find no evidence in the record of Bank One controlling BOIA, nor of the two entities acting as a single business enterprise. Moreover, there is ■ no evidence, of BOIA knowing of Ohle’s involvement in the Trust or his wrongdoing, until just prior to his suspension. Indeed, Mr. and Mrs. Ames retained Ohle’s services outside of his employment with both KPMG, initially, and BOIA.
*407 The majority of the work Ohle performed for Mrs. Ames involved the Trust, but Ohle’s BOIA employment was not trust-related. Indeed, Anthony Ames, Mrs. Ames’s husband, testified as to how he and his wife paid Ohle directly by check for his investment advising services even while he was employed by KPMG because the services Ohle provided were outside the scope of his KPMG employment. Similarly, as Mr. Ames further testified, when Ohle transitioned to BOIA, he received annual payments directly from the Trust pursuant to its terms. The only manner in which BOIA became entangled in Ohle’s deception of Mrs. Ames is as a result of his embezzlement of funds from the Trust to invest in BOIA’s HOMER tax-strategy.
, Violating both his fiduciary duties as a trustee and BOIA’s Code of Conduct, Ohle siphoned-off money from the Trust while simultaneously plotting to deprive Bank One of some of its fees from the sale. Ohle did establish an irrevocable trust for Mrs. Ames at another Bank One entity, but said trust had a Separate advisor and none of the claims in the instant matter involve that trust.
Mr. Dye testified that as a BOIA employee, he managed four different groups: ISG, financial planning services, insurance, and business development. He explained that'ISG’s purpose was to assist clients with financial planning services and estate planning. Trust services were not provided by ISG.
lifiDavid Kundert, a BOIA executive, testified that he interviewed Ohle for his ISG position, and Ohle did not divulge his position as trustee of the Trust. Ohle also did not disclose his trustee position on the documentation he submitted to BOIA as a new employee, which asked for all conflicts of interest to be listed.[10]
Bank One has demonstrated that Ohle was not its employee and that it did not exercise control- over - Ohle. Additionally, Mr. Uhalt does not present law supporting how a parent company, such as Bank One, can be vicariously liable for the actions of its subsidiary’s employee. Considering that a parent company is not liable for the acts of. its subsidiaries, we further find no precedent .for holding that a parent , company can be vicariously liable for the actions of an employee of its subsidiary. In light of the foregoing, we find that there is no genuine issue of material fact as to whether Bank One is a proper party defendant in this matter, nor is it responsible for Ohle’s actions under the doctrine of re-spondeat superior.
Fraud
In his final assignment of error, Mr. Uhalt avers that Bank One engaged in fraudulent concealment to prevent Bank One customers, such as Mrs. Ames, from discovering its alleged self-dealing actions. Mr. Uhalt contends that the fraudulent concealment here is based on a special fiduciary duty. Bank One owes to Mrs. Ames, ie., a relationship between a client and an advisor providing investment advice. Greene v. Gulf Coast Bank, 593 So.2d 630, 632 (La. 1992).
Mr. Uhalt further argues that a duty exists based on the testimony of his compliance expert, Vivian Velazquez, that section 206 of the Investment Advisers |17Act of 1940, the anti-fraud provision, was violated. Under the Act, he argues that advis-ors have a duty to their clients, including acting in the best interest of their clients and an obligation of using reasonable dare to avoid misleading clients. He also argues *408 that ample evidence shows that Bank One knew of Ohle’s promotion of Carpe Diem to Mrs. Ames by January 2002, at least. He asserts that Ohle and Bank One entered into a settlement agreement wherein both parties were precluded from informing Mrs. Ames or any other Bank One clients of Ohle’s wrongdoing.[11]
Mr. Uhalt argues that Bank One failed to contact aggrieved investors to alert them of Ohle’s actions. He maintains that the following genuine issues of material fact exist such as: whether a warning by Bank One to Mrs. Ames shortly after she invested in Carpe Diem could have prevented the losses incurred by Bank One’s failure to act; and whether Bank One’s actions also led Mrs. Ames to incur losses that continued after Ohle was no longer employed with Bank One for which Bank One is liable.
Fraud is defined as “a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other” and can result from silence or inaction. La. Civ. Code. art. 1953. Fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence. La. Civ. Code art. 1957.
Two elements must be proven to establish fraud: an intent to defraud and resulting damage. Lomont v. Bennett, 14-2483, p. 11-12 (La. 6/30/15), 172 So.3d 620, 629, cert. denied sub nom. Myer-Bennett v. Lomont, — U.S. -, 136 S.Ct. 1167, 194 L.Ed.2d18 178 (2016) [citations omitted]. Furthermore, while “fraud may be found from silence, there must be a duty to speak,” Id. quoting Greene v. Gulf Coast Bank, 593 So.2d 630, 632 (La. 1992). “Louisiana law recognizes that the refusal to speak, in the face of an obligation to do so, is not merely unfair but is fraudulent.” Id., quoting Bunge Corporation v. GATX Corporation, 557 So.2d 1376, 1383 (La.1990).
Mr. Uhalt relies upon the Supreme Court’s holding in Greene to support his position that Bank One and Mrs. Ames had a fiduciary relationship that warranted it to warn her of Ohle’s fraudulent actions. In Greene, the Supreme Court explained that while a “bank and depositor have a debtor-creditor relationship with no independent duty of care imposed on the bank,” “certain special circumstances, such as a fiduciary relationship between the bank and depositor, will give rise to a duty. Greene, 593 So.2d at 632. Thus, Mr. Uhalt maintains that a fiduciary relationship existed between Bank One and Mrs. Ames, which was that of an advisor providing investment advice to a client.
The facts of this matter do not reflect that a special fiduciary relationship existed between the parties. Ohle began and continued providing Mrs. Ames investment advice in a personal capacity, never as an employee of BOIA. Ohle was hired to prepare financial statements and wealth-transfer plans for high-net worth clients. His job did not encompass providing investment advice to clients; and the division within which he worked at ISG was not the advisory arm of Bank One, as testified to by Mr. Dye and Mr. Atwater. They further testified that BOIA has non-ISG employees that provided investment advice and further that Bank One has a separate entity that provided trust services. Therefore, Bank One would not be | pliable for investment services that Ohle provided to the Ames outside of his BOIA employment.
*409 Mr. Dye testified that he learned óf Ohle’s promotion of Carpe Diem to another client in January 2002, which was a violation of one of Mr. Dye’s directives to him. Ohle was suspended as a result of the internal investigation, which led to an inquiry of Ohle’s relationship with the Ames family. Nevertheless, Ohle refused to comply with the investigation, so neither BOIA nor Bank One learned the details of what transpired between Ohle and Mrs. Ames.
Lastly, as the district court noted, Mrs. Ames was unable to be deposed due to her interdiction; thus, there is no testimony as to what her relationship with Bank One was, nor what representations or omissions were made to her by Bank One and/or its employees upon which she relied. Finding no evidence of a fiduciary relationship, or an intent to defraud, we conclude that there is no genuine issue of material fact as to whether Bank One fraudulently concealed Ohle’s actions from Mrs. Ames. This assignment of error is without merit.
Answer to the Appeal
Bank One avers that its answer to the appeal was filed out of an abundance of caution, although it “does not seek modification, revision, or reversal” of the judgment below, and raises arguments that are all “supported by the record.” La. Code Civ. Proc. art. 2133(B); e.g. Slaughter v. La. State Employees’ Ret. Sys., 15-324 (La. 10/14/15), 180 So.3d 279, 281-82; Johno v. Doe, 15-737 (La. App. 4 Cir. 3/9/16), 187 So.3d 581, 584. It avers that in addition to the district court’s Reasons for Judgment, the district court’s February 4, 2016 judgment should be affirmed for additional reasons. However, having affirmed the judgments of the district court, the Answer to Appeal is moot as it seeks no further relief.
laiDECREE
For the foregoing reasons, the district court judgments of January 26, 2016, February 4, 2016, and March 23, 2016, in favor of J.P. Morgan Chase & Co. f/k/a Bank One Corporation, and John B. Ohle, III, respectively, are affirmed. The Answer to Appeal is denied as moot.
AFFIRMED; ANSWER TO APPEAL DENIED AS MOOT
LOVE, J., CONCURS IN PART AND DISSENTS IN PART
LEDET, J., DISSENTING IN PART WITH REASONS

. Mr. Uhalt replaced his mother, Ectera N. Ames ("Mrs. Ames”), as the plaintiff in this matter after her interdiction.

. Ohle, was working as an accountant for KPMG. L.L.P., when Mrs. Ames hired him in an individual capacity.

. The Innovative Strategies Group was a division within Banc One Investment Advisors Corporation ("BOIA”), a Bank One subsidiary.

. The Trust was held in a Charles Schwab account.

. Ohle also established the Ecetra Nippert Ames Irrevocable Trust at American National Bank & Trust Co., another Bank One entity.

. Rein v. Edwards, 05-754 (La.App. 3 Cir. 2/1/06), 921 So.2d 1158.

. Both this Court and the United States Eastern District Court of Louisiana addressed that the Trust accounting provided to Mrs. Ames reflected the questionable transactions at issue; and her failure to inquire into the transactions present therein. Ames, 11-1540, p. 13-14, 97 So.3d at 394-95; and Ames v. Ohle, 2010 WL 5055893 (E.D. La. Dec. 1, 2010) (unpub.). We do not-have the benefit of Mrs. Ames testimony because: she was interdicted before she could be deposed.

. "A judgment and reasons for judgment are two separate and distinct documents. La. C.C.P. art.1918. Appeals áre taken from the judgment, not the written reasons for judgment.” Greater New Orleans Expressway Comm’n v. Olivier, 02-2795, p. 3 (La. 11/18/03), 860 So.2d 22, 24.

. “The 'single business enterprise' doctrine is a theory for imposing liability where two or more business entities act as one. Generally, under the doctrine, when corporations integrate their resources in operations to achieve a common business purpose, each business may be held liable for wrongful acts done in pursuit of that purpose.” Brown v. ANA Ins. Grp., 07-2116, p. 2, n. 2 (La. 10/14/08), 994 So.2d 1265, 1266 (citing Green v. Champion Insurance Company, 577 So.2d 249 (La.App. 1st Cir.1991); Brown v. Automotive Casualty Ins. Co., 644 So.2d 723 (La.App. 1st Cir. 1994)).

. Bank One admits that Ohle disclosed the trusteeship to BOIA’s compliance department; however, it. maintains that such disclosures were required for employees to disclose trusteeships that were outside of an employee’s job,

. This settlement agreement was related to the suspension of Ohle's employment by BOIA and his threatening to sue BOIA, which did not terminate his employment.