Judge Rosemary Ledet
This is a complex commercial litigation dispute. Robert and Nicole Armbruster, a married couple, and two companies controlled by Mr. Armbruster-F.I.N.S. Construction, LLC ("FINS"); and Celeste Developer, LLC ("Developer")-are the Plaintiffs. Steven Anderson and four companies controlled by Mr. Anderson-Cambrie Celeste, LLC ("Celeste"); Cambrie Partners I, LLC ("Partners"); Cambrie Celeste Commercial Tenant, LLC ("Tenant"); and Avalon Re: Partners, LLC ("Avalon")-are the Defendants. From the trial court's judgment granting the Defendants' peremptory exception of res judicata and dismissing the suit, the Plaintiffs appeal. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Mr. Anderson is a property developer who specializes in the use of tax credits to develop properties. Mr. Armbruster is a contractor. Together, Mr. Armbruster and Mr. Anderson, through various companies that they respectively control, have engaged in numerous real estate and construction ventures. The ventures jointly entered into by Mr. Anderson and Mr. Armbruster have spawned much litigation. The joint venture that gave rise to the instant litigation involved a project to rehabilitate property located at 621 Celeste Street in New Orleans, Louisiana (the "Property").
Briefly summarized, the factual background of the venture is as follows. On March 21, 2006, pursuant to an act of cash *313 sale, Religious and Celeste, LLC ("R & C"), an entity co-owned by the Armbrusters,[1] acquired the Property for $1,480,000.[2] R & C ultimately intended to develop the Property, in multiple phases, into mixed used commercial, retail, and residential space. The first phase of R & C's development plans was to rehabilitate the building located on the Property, which at the time of acquisition was a three-story shell in poor condition. R & C used FINS-Mr. Armbruster's construction company-to perform the work.[3] R & C also began the process of applying for historic tax credits ("HTC") for the rehabilitation project.
R & C financed the rehabilitation project by obtaining from Omni Bank ("Omni") two loans, totaling $2,872,000, which the Armbrusters personally guaranteed. R & C defaulted on the Omni loans, and Omni commenced a foreclosure action on June 10, 2009. To avoid foreclosure, Mr. Armbruster, acting as R & C's representative, entered into a deal with Mr. Anderson and two of his companies, Avalon and Celeste. The deal, as ultimately closed, encompassed two steps. Collectively, these two steps are referred to as the "Transaction."
The first step of the Transaction was an act of cash sale, executed on December 29, 2009, by which R & C transferred title to the Property to Celeste subject to the Omni mortgage. The second step of the Transaction occurred on March 22, 2010, when Celeste assumed R & C's Omni debt. As part of the Transaction, Mr. Armbruster and Mr. Anderson, through their respective companies, also entered into various other agreements, including a lease (the "Lease").
The Lease was an integral part of the second step of the Transaction. According to the Defendants, the parties entered into a New Markets Tax Credit ("NMTC") transaction to obtain a low market loan to refinance the existing debt on the Property. In order for the NMTC transaction to close, the Property had to be leased. On March 22, 2010, Celeste leased to Tenant the commercial component of the Property. On that same date, Celeste, Tenant, and Starboard Management, LLC ("Starboard"), a company owned by the Armbrusters, entered into the Lease. Under the Lease, Starboard rented the residential component of the Property from Celeste and the commercial component from Tenant. Contemporaneously, the Armbrusters, FINS, and Developer (collectively the "Guarantors") executed an agreement to guarantee Starboard's obligations under the Lease (the "Guaranty").
About three months after the second step of the Transaction, on June 2, 2010, R & C filed a petition for relief under Chapter 11 of the Bankruptcy Code.[4] On March 1, 2012, Celeste and Tenant (the lessors) filed in Louisiana state court a cumulated *314 action for eviction and breach of contract against Starboard and the Guarantors.[5]
In response, on March 29, 2012, R & C filed an adversary proceeding in the Bankruptcy Case against Mr. Anderson, Celeste, Partners, and Avalon (the "Adversary Proceeding").[6] The gist of R & C's claims in the Adversary Proceeding was that the documents executed in connection with the Transaction did not accurately memorialize the deal it had made with Mr. Anderson and that instead Mr. Anderson had defrauded R & C with respect to the Transaction.[7] The relief R & C requested was to have the Bankruptcy Court void the Transaction.
In March and April 2013, a seven-day trial was held in the Adversary Proceeding. On April 11, 2014, the Bankruptcy Court's Judgment was issued, dismissing R & C's claims. On August 11, 2014, the United States District Court for the Eastern District of Louisiana affirmed the Bankruptcy Court's Judgment, stating: "[i]nsofar as the core proceedings are concerned, the Court finds that the ruling of the Bankruptcy Court is not clearly erroneous; as to all other claims, the Court finds no error of fact or law on this record, and accepts the Bankruptcy Court's proposed findings of fact and conclusions of law, overruling objections to the same."
After the conclusion of the trial in the Adversary Proceeding, the stay of the Eviction case was lifted in July of 2013. During the following three years of litigation of the Eviction Case, Starboard was summarily evicted and held in contempt.[8] On July 27, 2016, the trial court granted a motion for summary judgment filed by Celeste and Tenant and rendered judgment against Starboard and the Guarantors in the amount of $1,614,941.69, representing past due rent and damages. Starboard and the Guarantors appealed. On November 6, 2017, this court affirmed the trial court's judgment granting summary judgment as to Starboard only; however, as to the Guarantors, this court reversed the trial court's judgment granting summary judgment and remanded for further proceedings. Cambrie Celeste LLC v. Starboard Mgmt., LLC , 16-1318 (La. App. 4 Cir. 11/6/17), 231 So.3d 79, writ denied , 17-2041 (La. 2/2/18), 235 So.3d 1110 (hereinafter " Starboard ").
Meanwhile, on October 27, 2016, while the appeal in the Eviction Case was still pending, the Plaintiffs filed in Louisiana state court the instant suit, styled a petition for declaratory judgment. In their petition, *315 the Plaintiffs set forth in detail the facts of the Transaction and alleged that Mr. Anderson and the other defendants-companies owned and controlled by Mr. Anderson-drafted and fraudulently induced Mr. Armbruster, on behalf of the other plaintiffs, to execute six specific agreements (the "Anderson Documents") in a complex scheme to enable the Defendants to obtain lucrative tax credits.[9] Through the petition, the Plaintiffs sought to rescind the Anderson Documents. In the alternative to rescinding the Anderson Documents, the Plaintiffs sought damages for bad faith breach of contract and unfair trade practices. In response, the Defendants filed an exception of res judicata. On June 7, 2017, the trial court rendered judgment granting the Defendants' exception of res judicata and dismissing with prejudice the Plaintiffs' claims.[10] This appeal followed.[11]
DISCUSSION
Although the Defendants assert multiple assignments of error,[12] the dispositive issue is whether the trial court erred in granting the Defendants' peremptory exception of res judicata. This court has noted that it reviews factual issues relating to an exception of res judicata under a manifest error-clearly wrong standard and that it reviews legal issues relating to an exception of res judicata under a de novo standard.
*316 Countrywide Home Loans Servicing, LP v. Thomas , 12-1304, p. 3 (La. App. 4 Cir. 3/20/13), 113 So.3d 355, 357 ; Ames v. Ohle , 16-0612, p. 6 (La. App. 4 Cir. 4/26/17), 219 So.3d 396, 402.
"Res judicata is an issue preclusion device found both in federal law and in state law." Terrebonne Fuel & Lube, Inc. v. Placid Ref. Co ., 95-0654, 95-0671, p. 11 (La. 1/16/96), 666 So.2d 624, 631 ; BBCL Enterprises, LLC v. Am. Alternative Ins. Corp ., 15-0469, p. 3 (La. App. 4 Cir. 2/3/16), 187 So.3d 65, 67 (citing Terrebonne , supra ). "The purpose of both federal and state law on res judicata is essentially the same; to promote judicial efficiency and final resolution of disputes by preventing needless relitigation." Terrebonne , 95-0654, 95-0671 at p. 12, 666 So.2d at 631. "Under federal precepts, 'claim preclusion' or 'true res judicata' treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.' " Reeder v. Succession of Palmer , 623 So.2d 1268, 1271 (La. 1993).
Since 1991,[13] res judicata under Louisiana law, akin to federal law,[14] applies to "all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished." La. R.S. 13:4231. The res judicata doctrine, in Louisiana, is stricti juris ; "any doubt regarding the application of the doctrine must be resolved against its application." Bd. of Sup'rs of Louisiana State Univ. v. Dixie Brewing Co., Inc ., 14-0641, p. 6 (La. App. 4 Cir. 11/19/14), 154 So.3d 683, 688 (collecting cases).
Here, the Defendants premised their res judicata exception on two judgments-one federal and one state. The federal judgment was rendered on August 11, 2014, by the United States District Court for the Eastern District of Louisiana, which affirmed *317 the Bankruptcy Court's Judgment in the Adversary Proceeding (the "Bankruptcy Court's Judgment"). The state judgment was issued on July 27, 2016, by the trial court in the Eviction Case (the "State Court's Judgment").[15]
After the trial court rendered its decision granting the Defendants' res judicata exception in this case, however, this court rendered its decision in Starboard , reversing the State Court's Judgment as it pertains to all parties in that case except for Starboard. As a result of our decision in Starboard , any res judicata effect of the State Court's Judgment was lost. See La. R.S. 13:4231 cmt. (d) (stating that "the preclusive effect of a judgment attaches once a final judgment has been signed by the trial court and would bar any action filed thereafter unless the judgment is reversed on appeal"). The State Court Judgment thus can no longer have any res judicata effect. The narrow issue before us is whether the Bankruptcy Court's Judgment has res judicata effect.
"A prior federal court judgment in a case involving the same facts ... may support a plea of res judicata in a Louisiana court." 1 Frank L. Maraist and Harry T. Lemmon, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE § 6.7 (1999) (citing Reeder , 623 So.2d at 1271 ). Louisiana courts " 'have repeatedly confirmed that federal law is applicable to consideration of whether a federal court judgment has res judicata effect.' " Jones ex rel. Jones v. GEO Grp., Inc. , 08-1276 p. 5 (La. App. 3 Cir. 4/1/09), 6 So.3d 1021, 1025 (quoting Green v. Iberia Parish Sch. Bd ., 06-1060, p. 3 (La. App. 3 Cir. 12/20/06), 945 So.2d 940, 943 ).[16]
"A bankruptcy judgment, just as any judgment under federal res judicata law, bars a subsequent suit if all of the following tests are satisfied: 1) both cases involve the same parties; 2) the prior judgment was rendered by a court of competent jurisdiction; 3) the prior decision was a final judgment on the merits; and 4) the same cause of action is at issue in both cases." Terrebonne , 95-0654, 95-0671 at p. 15, 666 So.2d at 633 (citing Matter of Baudoin , 981 F.2d 736, 740 (5th Cir. 1993) ; Eubanks v. F.D.I.C. , 977 F.2d 166, 169 (5th Cir. 1992) ).
Contrary to the Plaintiffs' contention, we find all four federal res judicata requirements are satisfied here. The second and third requirements are easily met. The Bankruptcy Court's ruling in the Adversary Proceeding was affirmed by the federal district court; hence, the Bankruptcy Court's Judgment is a final judgment rendered by a court of competent jurisdiction. See *318 Stern v. Marshall , 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011).[17] The first and the fourth requirements, however, require more detailed analysis.
For purposes of federal res judicata, the contours of the requirement that the parties be the same have been defined as follows:
"[P]arties" for purposes of res judicata does not mean formal, paper parties only, but also includes " 'parties in interest, that is, that persons whose interests are properly placed before the court by someone with standing to represent them are bound by the matters determined in the proceeding.' " (quoting 1B J. Moore, Moore's Federal Practice , P.O. 411[1] at 390-391 (2d ed. 1983) ) (emphasis supplied). A non-party is in privity with a party for res judicata purposes in three instances. First, if he has succeeded to the party's interest in property, he is bound by prior judgments against the party. Second, if he controlled the prior litigation, he is bound by its result. Third, he is bound if the party adequately represented his interests in the prior proceeding.
Latham v. Wells Fargo Bank, N.A., 896 F.2d 979, 983 (5th Cir. 1990).
The Plaintiffs emphasize that the debtor, R & C, was the sole plaintiff in the Adversary Proceeding and thus the sole party to whom the Bankruptcy Court could grant relief. They emphasize that, in *319 this case, four other parties are named as plaintiffs and that none of the Plaintiffs was a debtor in the Bankruptcy Case. The Plaintiffs further contend that "[w]hile the contracts and documents at issue (the Anderson Documents) in [the Plaintiffs'] Petition for Declaratory Relief are also mentioned in the R & C bankruptcy proceeding, R & C was not a party to those contracts."[18]
The Defendants counter that the Armbrusters were the principals and the only members of the debtor, R & C; that Mr. Armbruster controlled the prior litigation; and that the Plaintiffs' interests were adequately represented in the Adversary Proceeding. The Defendants thus contend that the Plaintiffs are privies of R & C. We agree.
Our finding that the Plaintiffs are privies of R & C and that the identity of parties requirement is thus met is buttressed by the following statement in a footnote to the Bankruptcy Court's Judgment: "[d]espite the many entities and the sometimes multiple interests in the limited liability companies, the basic conflict in this case is between Robert Armbruster as the real plaintiff in interest and Steven Anderson as the real defendant in interest."[19] The Plaintiffs' argument to the contrar *320 y is unpersuasive. We thus find the identity of parties requirement is met.
For purposes of federal res judicata, the contours of the requirement that the causes of action be the same have been defined as follows:
"Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.' " Drake [v. FAA ,] 291 F.3d [59,] 66 [ (D.C. Cir. 2002) ] (quoting Page v. United States , 729 F.2d 818, 820 (D.C. Cir. 1984) ). In pursuing this inquiry, the court will consider " 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' " I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co ., 723 F.2d 944, 949 n. 5 (D.C. Cir. 1983) (quoting 1B J. Moore, MOORE'S FEDERAL PRACTICE ¶ 0.410[1] (2d ed.1983) ).
Apotex, Inc. v. Food & Drug Admin ., 393 F.3d 210, 217 (D.C. Cir. 2004).
The claims R & C asserted in the Adversary Proceeding involve the same transaction and occurrence at issue here. As the Defendants contend, the Plaintiffs are asserting, in this case, the same argument-that the actual "deal" involved in the Transaction was different than what is reflected in all the documents that they actually executed. The Plaintiffs also are seeking the same relief that R & C sought in the Adversary Proceeding-to void the Transaction.
The Plaintiffs' attempt to divorce the Anderson Documents from the Transaction addressed by the Bankruptcy Court's Judgment is unpersuasive. In the Bankruptcy Court's Judgment, the contours of the Transaction were expressly noted to include all the documents executed in connection with both steps of the Transaction-all the December 2009 and March 2010 closing documents. The Bankruptcy Court, in its judgment, expressed this point as follows: "[b]ecause the [T]ransaction consisted of both these steps, the use of [the] terms 'transfer' or 'transaction' in this opinion shall be construed [to] include all of the documents executed on December 29, 2009 and on March 22, 2010, unless otherwise specified." The Bankruptcy Court's Judgment thus encompassed the entire Transaction, including the Anderson Documents executed on those dates. The requirement that both actions involve the same cause of action is thus met.
In sum, all four federal res judicata requirements are met here. Nonetheless, the Plaintiffs contend-implicitly relying on a jurisprudential exception to res judicata[20] -that the Bankruptcy Court *321 was without subject matter jurisdiction over their claims.[21] In support, the Plaintiffs cite Stern , supra ., for the proposition that a bankruptcy court lacks subject matter jurisdiction over claims that "do not relate to the bankruptcy estate." The Plaintiffs' reliance on the Stern case is misplaced.
The Plaintiffs' argument generally conflates a bankruptcy court's subject matter jurisdiction with its constitutional authority to hear and decide cases. The Supreme Court, in the Stern case, however, observed that whether a bankruptcy court has subject matter jurisdiction over a matter is a different issue than whether a bankruptcy court has the statutory authority to decide a matter and to enter a final order and judgment on that matter. Stern , 564 U.S. at 480, 131 S.Ct. at 2607-08 (observing that "allocation [of core and non-core proceedings] does not implicate questions of subject matter jurisdiction").
Here, the Plaintiffs, in their petition for declaratory judgment, seek to rescind the Anderson Documents, which would, in effect, rescind the Transaction. The Plaintiffs' contention that their claims are not related to the Bankruptcy Case and that the Bankruptcy Court thus lacked subject matter jurisdiction over their claims is unpersuasive. As the federal district court's judgment in the Adversary Proceeding demonstrates, the Bankruptcy Court had subject matter jurisdiction over all matters related to the Transaction.[22] The Plaintiffs' implicit attempt to invoke an exception to the federal res judicata doctrine is unpersuasive.
In summary, all the requirements for res judicata are met; none of the exceptions to the res judicata doctrine apply. We thus find no error in the trial court's judgment granting the Defendants' peremptory exception of res judicata and dismissing the Plaintiffs' case.
*322 DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED

In March 2006, R & C was formed as a Louisiana limited liability company. When it was formed, R & C had two members-ABNA, LLC and CNRT, LLC. In late 2007 or early 2008, CNRT ceased to be a member, leaving ABNA as the only remaining member. ABNA was owned by the Armbrusters, who each were 50% members.

Although originally a single lot known only as "Lot Q," the Property is subdivided into Lot Q, on which the building bearing the municipal address 621 Celeste Street is situated; and Lot Q-2, which is an adjacent, vacant lot.

After R & C's work, the building contained a mix of ten residential units and two commercial units.

In re: Religious and Celeste, LLC , Docket No. 2010-11958, United States Bankruptcy Court for the Eastern District of Louisiana (the "Bankruptcy Case").

Cambrie Celeste LLC v. Starboard Mgmt., LLC , Docket No. 2012-1997 in the Civil District Court for the Parish of Orleans, (the "Eviction Case").

As a result of a consent agreement between the parties in the Adversary Proceeding, the Eviction Case was stayed.

In its complaint, R & C asserted the following seven causes of action: (1) fraudulent transfers under § 548 of the Bankruptcy Code ; (2) recovery of the transfers or the value of the transfers under § 550 of the Bankruptcy Code ; (3) avoidance of the transfers under the Louisiana revocatory action and other fraudulent transfer laws under § 544(b) of the Bankruptcy Code ; (4) unjust enrichment under state law; (5) fraud under state law; (6) piercing the corporate veil or single business enterprise under state law; and (7) recovery of unlawful distributions under state law.

As noted elsewhere in this opinion, the Eviction Case was stayed for about one year as a result of the Bankruptcy Case. After the trial in the Adversary Proceeding but before that court rendered a decision, the Guarantors and Starboard, filed, in the Eviction Proceeding, a reconventional demand and an amended reconventional demand asserting the same claims they assert in this case (hereinafter the "Reconventional Demand").

The Anderson Documents are as follows:
• Historic Tax Credit Guaranty, executed December 29, 2009, between the Armbrusters and Mr. Anderson;
• Development Agreement, executed December 28, 2009 between Cambrie Celeste and Cambrie Developer;
• Security and Pledge Agreement, executed March 22, 2010, by the Armbrusters, FINS, Cambrie Developer, and Starboard in Mr. Anderson's favor;
• Environmental and Hazardous Substances Indemnity Agreement, executed March 22, 2010, by the Armbrusters in Mr. Anderson's favor;
• Deposit Account Control and Pledge Agreement, executed March 22, 2010, by Omni, Mr. Anderson, and Cambrie Developer;
• Operating Agreement of Cambrie Partners, executed March 22, 2010, between Avalon and Mr. Armbruster.
Although in the petition the Plaintiffs refer once to the Lease Agreement as one of the Anderson Documents, elsewhere in the petition the Plaintiffs specifically enumerate the Anderson Documents as those six documents set forth above. Moreover, Starboard (the lessee) is not a party to this litigation.

The Defendants also requested sanctions, which the trial court denied. The ruling denying sanctions is not contested.

As discussed elsewhere in this opinion, this court rendered its decision in Starboard, supra, reversing, in part, the trial court's decision in the Eviction Case on November 6, 2017, which was after the trial court's judgment granting the Defendants' res judicata exception was rendered.

The plaintiffs assert the following five assignments of error:
1) The Trial Court improperly granted Defendants/Appellees' Exception of Res Judicata dismissing all of Plaintiffs/Appellants' claims with prejudice.
2) The Trial Court improperly applied the holding of Middleton [v. Parish of Jefferson , 97-324 (La. App. 5 Cir. 1/14/98), 707 So.2d 454 ] to Plaintiff's claims, resulting in the improper dismissal of Plaintiffs/Appellants' claims with prejudice.
3) The Trial Court improperly applied the holding of Middleton to the Bankruptcy Judgment, a judgment issued by a court of limited jurisdiction, namely the United States Bankruptcy Court for the Eastern District of Louisiana.
4) The Trial Court failed to recognize the constitutional restraints imposed upon the jurisdiction of federal bankruptcy courts in allowing a federal bankruptcy judgment relating to a non-party debtor to support Defendant/Appellees' Exception of Res Judicata.
5) The Trial Court improperly applied the State Judgment to Appellants' claims even though those claims were never considered by the Court.

In Louisiana, res judicata is implemented through a framework of code articles and statutes; effective January 1, 1991, "that framework was amended by the Legislature to be more akin to federal and common law." Bd. of Sup'rs of Louisiana State Univ. v. Dixie Brewing Co., Inc ., 14-0641, p. 6 (La. App. 4 Cir. 11/19/14), 154 So.3d 683, 688 (quoting M. David Kurtz and Mark W. Frilot, Res Judicata in Louisiana: A Synthesis of Competing Interests , 53 LA. B.J. 445 (2006) ). Since 1991, the Louisiana Supreme Court has considered the " 'chief inquiry' to be 'whether the second action asserts a cause of action which arises out of the transaction or occurrence that was the subject matter of the first action.' " Chevron U.S.A. Inc. v. State , 07-2469, p. 10 (La. 9/8/08), 993 So.2d 187, 194 (quoting Burguieres v. Pollingue , 02-1385, p. 7 (La. 2/25/03), 843 So.2d 1049, 1053 ). This change in the law "serves the purpose of judicial economy and fairness by requiring the plaintiff to seek all relief and to assert all rights which arise out of the same transaction or occurrence." La. R.S. 13:4231, cmt. (a).

In Louisiana, the governing statutory provision setting forth the requirements for res judicata is La. R.S. 13:4231, which provides as follows:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

The Defendants point out that the Plaintiffs' petition in this case is virtually identical to the reconventional demand that the Plaintiffs filed in the Eviction Case.

The Defendants, as the Plaintiffs emphasize, cited Middleton , supra , in the trial court in support of their exception. In that case, the issue presented was "whether a corporate official can avoid an exception of res judicata by bringing, in his individual capacity, a suit already litigated on behalf of the corporation." Id., 97-324 at p. 3, 707 So.2d at 455. Answering that question in the negative, the court observed that "veil piercing must be used in this instance not to impose personal liability on Mr. Middleton but to prevent his use of subversive tactics to take an unjust advantage of a legal distinction. Allowing a corporate official to bring suit in his individual capacity, solely for the purpose of avoiding an exception to res judicata, would be an unjust result." Id. , 97-324 at p. 7, 707 So.2d at 457. Given our finding that the only judgment relevant for res judicata purposes here is the Bankruptcy Court's Judgment coupled with the controlling law being federal res judicata principles, we pretermit discussing the Middleton case, involving Louisiana state law.

In Stern , the Supreme Court explained the authority of bankruptcy judges as follows:
Bankruptcy judges may hear and enter final judgments in "all core proceedings arising under title 11, or arising in a case under title 11." § 157(b)(1). "Core proceedings include, but are not limited to" different types of matters, including "counterclaims by [a debtor's] estate against persons filing claims against the estate." § 157(b)(2)(C). Parties may appeal final judgments of a bankruptcy court in core proceedings to the district court, which reviews them under traditional appellate standards. See § 158(a); Fed. Rule Bkrtcy. Proc. 8013.
When a bankruptcy judge determines that a referred "proceeding ... is not a core proceeding but ... is otherwise related to a case under title 11," the judge may only "submit proposed findings of fact and conclusions of law to the district court." § 157(c)(1). It is the district court that enters final judgment in such cases after reviewing de novo any matter to which a party objects. Ibid.
564 U.S. at 474-75, 131 S.Ct. at 2603-04.
The Supreme Court, in Stern , observed that "Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. See §§ 157(b)(1), (c)(1). That allocation [of core and non-core proceedings] does not implicate questions of subject matter jurisdiction." 564 U.S. at 480, 131 S.Ct. at 2607. The distinction between "core" and "non-core" proceedings is addressed in In re Wood , 825 F.2d 90 (5th Cir. 1987). The court in Wood observed that "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."Id. at 97. Contrasting core and non-core proceedings, the court in Wood stated that "[i]f the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an 'otherwise related' or non-core proceeding." Id. (emphasis in original).
In its judgment, the Bankruptcy Court stated that "[t]his adversary proceeding is a core proceeding.... To the extent that this court lacks the power to enter a final decision as to the state law claims raised in this adversary proceeding because of the decision of the United States Supreme Court in Stern v. Marshall , [564 U.S. 462,] 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), this memorandum opinion constitutes the court's proposed findings of fact and conclusions of law." As noted elsewhere in this opinion, the federal district court affirmed the Bankruptcy Court's decision as to the core proceedings and, as to any non-core proceedings, accepted the Bankruptcy Court's proposed findings of fact and conclusion of law and entered judgment.

The Plaintiffs included a similar argument in a footnote to the Reconventional Demand in the Eviction Case, which stated as follows:
Religious has been reorganized pursuant to Chapter 11 of the United States Bankruptcy Code and has filed its own lawsuit against certain of the Defendants in the United States Bankruptcy Court for the Eastern of Louisiana. Those claims asserted by Religious include claims for avoidance of the transfer of property to Cambrie Celeste under the United States Bankruptcy Code and for fraud upon Religious itself. Counterclaimants herein assert their own, independent causes of action over which the Bankruptcy Court has no jurisdiction and which it did not adjudicate. However, to the extent the Bankruptcy Court determines that a claim asserted on behalf of Religious is not property of Religious or can be asserted only by a party other than Religious, Counterclaimants assert all such claims on their own behalf together with the relief prayed for herein, and this pleading should be construed accordingly.

The Bankruptcy Court's finding is supported by the following statements in the Joint Pre-Trial Order in the adversary proceeding, identifying and defining the parties:
• R & C is a Louisiana limited liability company formed on March 15, 2006 whose sole member is ABNA, LLC. When formed, R & C had an additional member, CNRT, LLC. That entity has since withdrawn from R & C. The Armbrusters are the members of ABNA, LLC.
• Cambrie Celeste is a Louisiana limited liability company formed on December 14, 2009 whose members are Mr. Steven Anderson and Cambrie Celeste State Credit, LLC ("Cambrie State Credit"). Mr. Anderson has a 99% ownership interest in Cambrie Celeste and Cambrie State Credit has a 1% ownership interest in Cambrie Celeste. Mr. Anderson is the manager of Cambrie Celeste.
• Cambrie Partners is a Louisiana limited liability company formed on March 19, 2010, whose members are Avalon RE Partners LLC ("Avalon") and Mr. Armbruster. Avalon has a 99.9% ownership interest in Cambrie Partners and Mr. Armbruster has 0.1 % ownership interest in Cambrie Partners. Avalon is the Manager of Cambrie Partners. Avalon is a Florida limited liability company formed on March 23, 2009. Mr. Anderson is the Manager of Avalon.
• Cambrie Developer is a Louisiana limited liability company formed on December 21, 2009 whose sole member is Mr. Armbruster.
• Cambrie State Credit is a Louisiana limited liability company formed on December 14, 2009 whose members are Anderson and Cambrie STCI. Mr. Anderson has a 99% ownership interest in Cambrie State Credit, and Cambrie STCI has a 1% ownership interest in Cambrie State Credit. Mr. Anderson is the manager of Cambrie State Credit.
• FINS is a Louisiana limited liability company whose members are Mr. Armbruster and Mrs. Armbruster.
• Religious Q2, LLC ("Religious Q2") is a Louisiana limited liability company formed on March 5, 2010 whose sole member is Mr. Anderson.

In Terrebonne , supra , the Louisiana Supreme Court acknowledged the existence of exceptions to res judicata under exceptional circumstances, observing:
Although rarely mentioned, exceptions exist to the common law theory of res judicata, as noted in the Restatement (Second) of Judgments, § 26 (1982). These exceptions involve "exceptional circumstances" as where (a) the parties have agreed that the plaintiff may split his claim, or the defendant has acquiesced therein; (b) the court in the first action has expressly reserved the plaintiff's right to maintain the second action; (c) there are restrictions on the subject matter jurisdiction of the courts; (d) the judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme; (e) for policy reasons; or (f) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason. Restatement (Second) of Judgments, § 26 (1982), pg 233-234.
95-0654, 95-0671 at p. 13, 666 So.2d at 632. The Louisiana Supreme Court noted in Terrebonne that the 1990 amendments enacting La. R.S. 13:4231 included a companion statute, La. R.S. 13:4232, which enumerated similar exceptions, including "[w]hen exceptional circumstances justify relief from the res judicata effect of the judgment." Terrebonne , 95-0654, 95-0671 at p. 13, n. 4, 666 So.2d at 632.

The Plaintiffs made the same argument in their Reconventional Demand in the Eviction Case-that the Bankruptcy Court had jurisdiction over only the debtor's (R & C's) claims and lacked jurisdiction over their claims.

Even in the context of a non-core proceeding claim, a similar argument regarding the exceptions to the res judicata doctrine has been rejected. In CoreStates Bank, N.A. v. Huls Am., Inc ., 176 F.3d 187, 198 (3d Cir. 1999), the court reason as follows:
We think the exceptions set forth in section 26(1)(c) of the Restatement are inapplicable to the case at bar. A bankruptcy judge's jurisdiction over a non-core "related" claim is not limited in the sense of that section. Section 26(1)(c) applies to limitations on the types of theories, remedies, or relief available if a claim is brought in a particular forum. But bringing a non-core "related" claim before a bankruptcy judge does not in any way limit the available theories, remedies, or relief. Cf. Celotex Corp. v. Edwards , 514 U.S. 300, 309 n. 7, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (rejecting the argument that a bankruptcy judge does not have the power to issue an injunction barring an action in a different district court). A bankruptcy judge is perfectly capable of recommending, and the district court of awarding, judgment based on any theory, remedy, or relief, just as if the claim had been brought originally before a district court, or even a state court of general jurisdiction, outside of a bankruptcy proceeding.