NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 23-660

SHAWNE GIELEN GARDINER

VERSUS

SHOP RITE, INC., TOBACCO PLUS, INC.
ACADIA WHOLESALE & TOBACCO, CO., INC.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 202110263
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

**********

GUY E. BRADBERRY
JUDGE

**********

Court composed of D. Kent Savoie, Guy E. Bradberry, and Wilbur L. Stiles, Judges.

AFFIRMED.

**Steven Gerald Durio**
**Durio, McGoffin, Stagg & Guidry**
**P.O. Box 51308**
**Lafayette, LA 70505-1308**
**(337) 233-0300**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **Shawne Gielen Gardiner**

**Christopher L. Zaunbrecher**
**Briney Foret Corry**
**413 Travis Street, Suite 200**
**Lafayette, LA 70503**
**(337) 456-9835**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
      **Tobacco Plus, Inc.**
      **Shop Rite, Inc.**
      **Acadia Wholesale & Tobacco, Co., Inc.**
      **John Cody Gielen**

**BRADBERRY, Judge.**

In this matter, Shawne Gardiner appeals the decision of the trial court below granting an exception of res judicata in favor of Defendant corporations Shop Rite, Inc., Tobacco Plus, Inc., and Acadia Wholesale and Tobacco, Co. Inc., as well as the corporation's chief executive and her nephew, John Cody Gielen (herein collectively referred to as the Defendants). For the following reasons, we hereby affirm the decision of the trial court.

The underlying facts of this case were previously laid out by this court in *Shop Rite, Inc. v. Gardiner*, 21-172, pp. 1–4 (La.App. 3 Cir. 12/15/21) (unpublished opinion) (2021 WL 5925774) (footnote omitted) (second alteration ours), *writ denied*, 22-329 (La. 5/3/22), 337 So.3d 159, as follows:

> On February 28, 2012, Ms. Gardiner's father, John Dan Gielen, donated a minority interest in Shop Rite, Inc., Tobacco Plus, Inc., and Acadia Wholesale & Tobacco Co., Inc. (collectively, "the Companies") to his children (Ms. Gardiner, Tracy Gielen, and Heidi Gielen Viator) and to a grandson (John Cody Gielen). After Mr. Gielen's death on February 14, 2018, his spouse, Peggy Gielen ("Peggy"), became the owner of half of the majority shares in the Companies and was testamentary usufructuary with right of alienation of the other half of the community shares, also referred to by the parties as legacy shares. Mr. Gielen's Last Will and Testament dispensed with "any inventory of the property subject to the usufruct or any bond or security for the value of the usufruct[,]" and granted Peggy, "as usufructuary, with respect to all property subject to the aforementioned usufructs, the right to sell, exchange, or otherwise dispose of such property, without the consent of the naked owners, throughout the term of the usufruct." These legacy shares were subject to testamentary legacies of naked ownership in favor of the Gielens' children and grandson. On February 21, 2018, Peggy transferred all of her owned shares and all of the estate shares in the Companies to voting trusts and named her grandson, John Cody Gielen ("John Cody"), the trustee.
>
> On July 23, 2018, Ms. Gardiner gave written notice of her withdrawal as a minority shareholder in the Companies on grounds of oppression pursuant to the provision of La.R.S. 12:1-1435, which constituted an offer to sell to the Companies all of her shares in the corporations for fair value. On July 25, 2018, the Companies received the notice of withdrawal.

On September 21, 201[8], the Companies responded to Ms. Gardiner's notice by denying that she was an oppressed shareholder and gave her notice of the Companies' acceptance of her offer to sell her shares in accordance with La.R.S. 12:1-1435.

On October 22, 2019, the Companies filed a Petition for Declaratory Judgment to determine the fair value of Ms. Gardiner's shares and the terms under which her shares would be purchased by the Companies. . . .

. . . .

On October 29, 2019, Ms. Gardiner answered the Companies' petition and filed a reconventional demand pursuant to La.R.S. 12:1-1436 in order for the court to determine the fair value of her shares and to determine the terms for the purchase of the shares.

. . . .

In response to the reconventional demand, the Companies filed an answer on November 13, 2019, wherein they admitted that Ms. Gardiner was the record owner of 39.216 shares in Shop Rite, Inc., 1.292 shares in Tobacco Plus, Inc., and 19 shares in Acadia Wholesale & Tobacco Co., Inc., but denied the fact that Ms. Gardiner is the naked owner of the inherited 79.49 shares in Shop Rite, Inc., 3.4425 shares in Tobacco Plus, Inc., and 50.625 shares in Acadia Wholesale & Tobacco Co. Specifically, the Companies allege that the shares that were subject to a testamentary legacy of naked ownership in favor of Ms. Gardiner were transferred by Ms. Gardiner's mother, Peggy (usufructuary with the right of disposition), to voting trusts and were subsequently redeemed by the Companies.

On July 2, 2020, the Companies filed a Peremptory Exception of No Right Of Action arguing that Ms. Gardiner has no right of action to request for the trial court to determine the fair value and terms for the purchase of shares she inherited in her father's estate, which entailed the 79.49 shares in Shop Rite, Inc., 3.4425 shares in Tobacco Plus, Inc., and 50.625 shares in Acadia Wholesale & Tobacco Co., Inc. The Companies argued that Ms. Gardiner did not own the legacy shares on the date of the withdrawal and that she had no capacity or right to sell them on the date of the withdrawal. The Companies allege that her interest in the legacy shares terminated "on February 21, 2018, when the testamentary usufructuary with right of alienation transferred ownership of the shares to a Voting Trust, or in any event no later than April 17, 2019[,] when the shares previously subject to naked ownership interest in favor of Ms. Gardiner were redeemed by the Company." The Companies argue that "[a]s a consequence of the transfer of the estate shares to a third party, [Ms.] Gardiner has no claim

2

or right of action as a former naked owner except a potential, inchoate future action against the usufructuary for an accounting upon termination of the usufruct."

On July 9, 2020, Ms. Gardiner filed an opposition to the exception of no right of action wherein she alleges that she acquired naked ownership of the legacy shares immediately at her father's death, subject to a usufruct in favor of her mother, Peggy. Ms. Gardiner argues that, as the naked owner, she retains a beneficial interest in the legacy shares despite the shares being registered on the records of the corporation in the name of the usufructuary or in the voting trusts with John Cody as the trustee.

A hearing on the exception was held on July 14, 2021. At that time, the Companies introduced, under seal, thirty-eight exhibits that included copies of Mr. Gielen's Last Will and Testament, the Voting Trust Agreements, Amendments, Trust Deposits and Assignments of Shares, Stock Redemption Agreements, and Stock Transfers and Assignments. After the hearing, the trial court signed a judgment on September 3, 2020, that sustained, in part, the no right of action. The trial court provided the following pertinent reasons for its ruling sustaining the exception:

> Defendants in Reconvention, Shop Rite Inc., Tobacco Plus, Inc., and Acadia Wholesale and Tobacco Co. Inc. except to the reconventional demand filed by Gardiner, to the extent that Gardiner asks the court to determine the fair value and terms for the purchase for shares described in paragraph 3 of the reconventional demand. The basis for the exception is that Gardiner has no right of action. Mover argues that any interest Gardiner may have in those shares as a legatee of naked ownership terminated on February 21, 2018, when the testamentary usufructuary, with right of alienation, transferred ownership of the shares to a voting trust. In any event, ownership terminated no later than April 17, 2019, when the shares previously subject to naked ownership interest in favor of Gardiner were redeemed by the company. Plaintiff in reconvention opposes the exception arguing that Gardiner holds an interest in the legacy shares and the defendants in reconvention are judicially estopped from claiming otherwise.
>
> ....
>
> After review of the law, evidence and argument of counsel, this court finds from February 21, 2018 until April 17, 2019, the beneficial owners of the estate shares were the Voting Trust and Peggy A. Gielen. On April 17,

2019, these shares were redeemed by the companies. Gardiner cannot sell or offer to sell the estate shares for fair value. This court finds Ms. Gardiner does not have the right of action against the defendant in reconvention to seek a judicial determination of the fair value and terms for purchase for shares in which Gardiner previously had an interest as a testamentary legatee of naked ownership.

On appeal, this court went on to affirm that decision of the original trial court, stating:

[T]he Last Will and Testament provided Peggy with the right to dispose of the shares of stock in any way she chose to do so without the input from the naked owners.

The record provides that on February 21, 2018, shortly after her husband's death, Peggy transferred all of her owned shares as well as the legacy shares (Mr. Gielen was the record owner of the legacy shares) in the Companies to voting trusts and named her grandson, John Cody, the trustee. When Peggy transferred the legacy shares to the voting trusts, the legacy shares were cancelled and replaced with trust shares. **The Voting Trust Agreements provided for the deposit of certificates representing the shares owned by and/or subject to the usufruct of Peggy, endorsed in blank by Peggy or accompanied by a stock assignment for reissuance of the shares by the Companies in the name of the trustee. The Voting Trust Agreements also provided that the trustee, John Cody, was entitled to exercise all of the rights, including the right to vote the trust shares and to sell all or part of the trust shares.** The Voting Trust Agreements provided for issuance of Trust Certificates to Peggy, as the depositing shareholder, and provided that Peggy, or her successor in interest, shall be entitled to receive dividends or distributions received by the trustee upon the shares represented by the Trust Certificates. Thus, from February 21, 2018 until April 17, 2019, the beneficial owners of the legacy shares were the Voting Trusts (the record owner with voting rights) and Peggy (the Trust Certificate holder, with rights of reversion and the right to receive distributions). Per the shareholders' vote to have the Companies purchase the Voting Trust Shares, the legacy shares held by the Voting Trusts were redeemed by the Companies on April 17, 2019.

Although Ms. Gardiner asserts a claim for valuation of the legacy shares as a naked owner, we agree with the trial court that **on the date of her withdrawal, she had no ownership right in the shares**. **It is worth reiterating that Ms. Gardiner, as a naked owner, does not have a present ownership right in the legacy shares because Peggy, per her husband's Last Will and Testament, is the usufructuary with the right to sell, exchange, or otherwise dispose of the shares until the termination of her usufruct.** See La.Civ.Code art. 568.

4

Further, the record is devoid of any evidence that the Companies established a procedure under La.R.S. 12:1-723 to permit Ms. Gardiner the opportunity to file a beneficial ownership certificate electing to be treated by the Companies as the record shareholder. **After reviewing the statutory provisions, the Voting Trust Agreements, Amendments thereto, the Stock Redemption Agreements, the By-Laws of the Companies, and the Minutes of the Companies Shareholder Meetings, we, too, find that Ms. Gardiner did not have an ownership right in the legacy shares on the date of her withdrawal, July 23, 2018**, and that the only claim Ms. Gardiner has is a claim under La.Civ.Code art. 568.1, which provides an action against the usufructuary (Peggy) for an accounting upon termination of the usufruct.

*Id.* at pp. 8–9 (emphasis ours). That decision was appealed to the Louisiana Supreme Court, where writs were denied, making that ruling final as to that issue.

Thereafter, Mrs. Gardiner filed the current claim, asserting that Defendants breached their contract to purchase her legacy shares under the September 21, 2018 acceptance of her withdrawal, as well as breached their fiduciary duties and committed conflicted interest transactions in relation to the April 17, 2019 redemption of the voting trust shares by the Defendant corporations and by Cody. Defendants filed exceptions of res judicata, no cause of action, and no right of action. Based on the prior ruling of this court addressed above, the trial court granted the exception of res judicata, finding the other exceptions moot. From that decision, Mrs. Gardiner appeals.

On appeal, Mrs. Gardiner asserts two assignments of error: she claims the trial court erred in granting res judicata because the original enforcement suit and her claims regarding the alleged breaches from the redemption of the stock arose out of different transactions or occurrences; and that the trial court erred in failing to apply La.R.S. 13:4232(A)(1), where she alleges exceptional circumstances justify relief from any res judicata effects of the first suit. As to her second assignment of error, this contention was not raised or argued before the trial court, and is now being raised

5

for the first time on appeal.  It is well-settled that an appellate court cannot consider issues raised for the first time on appeal which have not been addressed by the trial court.  *Council of City of New Orleans v. Washington*, 09-1067 (La. 5/29/09), 9 So.3d 854; *Johnson v. State*, 02-2382 (La. 5/20/03), 851 So.2d 918; *Adams v. Lori Heaphy & Assoc.*, 14-580 (La.App. 3 Cir. 12/17/14), 155 So.3d 170.  Therefore, we need not address that assertion.[1]  As to her first assignment of error, we disagree.

In reviewing a trial court's ruling on a res judicata exception, an appellate court reviews legal issues under a de novo standard.  *Armbruster v. Anderson*, 18-55 (La.App. 4 Cir. 6/27/18), 250 So.3d 310, *writ denied*, 18-1276 (La. 11/5/18), 255 So.3d 1054.

Louisiana Revised Statutes 13:4231 codified a wide-ranging concept of res judicata, which "include[s] both claim preclusion (res judicata) and issue preclusion (collateral estoppel)." *Maschek v. Cartemps USA*, 04-1031, p. 5 (La.App. 4 Cir. 2/16/05), 896 So.2d 1189, 1193.  Issue preclusion is codified specifically in La.R.S.13:4231(3), which provides that "[a] judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment."  "Once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties." *Sanchez v. Georgia Gulf Corp.*, 02-1617, p. 14 (La. App. 1 Cir. 8/13/03), 853 So.2d 697, 706.

The jurisprudence has construed La.R.S. 13:4231(3) as requiring that the following three elements be present for issue preclusion to apply: "(1) a valid and

---

[1] Moreover, even if this issue were to be addressed, our finding as to the first assignment of error would render it moot.

final judgment; (2) identity of the parties; and (3) an issue that has been actually litigated and determined if its determination was essential to the prior judgment." *Liberty Mut. Fire Ins. Co. v. Weaver*, 16-1008, p. 4 (La.App. 3 Cir. 5/10/17), 219 So.3d 442, 445–46 (quoting *Harrell v. Harrell,* 99-1093, p. 1 (La.App. 1 Cir. 10/6/00), 808 So.2d 363, 373, *writ denied*, 01-2546 (La. 12/7/01), 803 So.2d 971); *Glob. Mktg. Sols., L.L.C. v. Chevron U.S.A. Inc.*, 18-1765 (La.App. 1 Cir. 9/27/19), 286 So.3d 1054, *writ denied*, 19-1886 (La. 2/10/20), 347 So.3d 741.

It is unquestionable that our prior decision clearly litigated the issue of whether Mrs. Gardiner had any interest or right in the legacy shares after the creation of the voting trust and transfer of the shares thereto on February 21, 2018. She did not. Likewise, that decision is a final and valid judgment, having been before us and with writs denied by the Louisiana Supreme Court. Mrs. Gardiner claims in passing, but does not fully brief, that the parties are different because Mr. Gielen was named in the second suit as well as the Defendant corporations, and that he was not named in the initial suit. However, Mrs. Gardiner conceded at the hearing on the exception that Mr. Gielen was in privity with the corporations, essentially conceding the parties are the same. Moreover, it is of no moment that all the same exact defendants named in the present suit were not all named in the initial suit. The doctrine of res judicata applies regardless of whether the former action included parties that were not named in the subsequent action, or vice versa, as long as judgment in the first action was rendered on the merits, the cause of action or issue was the same, and the party against whom the doctrine is asserted was a party to the former litigation. *Dreyfus v. First Nat. Bank of Chicago*, 424 F.2d 1171 (7th Cir. 1970), *cert. denied*, 400 U.S. 832, 91 S.Ct. 64 (1970). Both the corporate defendants and Mrs. Gardiner were parties in the first suit. All parties' interests regarding the exception of res judicata

7

in the present lawsuit were represented in the previous lawsuit. The corporate defendants have a right to assert res judicata as to any claim that Mrs. Gardiner previously litigated against them, as does Mr. Gielen for his actions as CEO in privity with those corporations, as conceded by Mrs. Gardiner.

Thus, because we have previously held that Mrs. Gardiner did not have an ownership right in the legacy shares on the date of her withdrawal, July 23, 2018, that issue is fully and finally resolved between the parties in *any* possible litigation. Because she no longer held any interest in the legacy shares after February 2018, we would be hard pressed to find she had any right of action as to the disposition of those shares at the time of the redemption. Nor would she have any right to assert any alleged breach of contract claims pertaining to those shares, as she clearly could not sell the legacy shares for fair value, or even seek a judicial determination of their fair value, as she had no interest in them after February 21, 2018, as per our prior ruling. As noted by this court's prior decision, Mrs. Gardiner's sole remedy remaining in regard to those shares is an action against her mother for an accounting as usufructuary. Accordingly, we affirm the decision of the trial court.

For the above reasons, we hereby affirm the decision of the trial court. Costs of this appeal are hereby assessed against Mrs. Gardiner.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.