# Supreme Court of Louisiana

The Opinions handed down on the **14th day of October, 2015**, are as follows:

**PER CURIAMS**:

2015-C -0324      DR. RALPH SLAUGHTER v. LOUISIANA STATE EMPLOYEES' RETIREMENT SYSTEM (Parish of E. Baton Rouge)

For the reasons assigned, the judgment of the court of appeal is reversed insofar as it finds the Louisiana State Employees' Retirement System failed to prove that it followed the proper procedure before initiating action to reduce and recoup plaintiff's retirement benefits. In all other respects, the judgment of the court of appeal is affirmed. The case is remanded to the district court for further proceedings not inconsistent with this opinion. All costs in this court are assessed against plaintiff.

JOHNSON, C.J., concurs and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2015-C-0324

DR. RALPH SLAUGHTER

VERSUS

LOUISIANA STATE EMPLOYEES' RETIREMENT SYSTEM

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE

PER CURIAM

In this matter, we are called upon to determine whether the lower courts erred in finding the defendant retirement system failed to prove that it followed the proper procedure before initiating action to reduce and recoup plaintiff's retirement benefits. For the reasons that follow, we find the lower courts did not apply the proper statutory analysis and reached an erroneous result.

**FACTS AND PROCEDURAL HISTORY**

In 2009, plaintiff, Dr. Ralph Slaughter, retired as president of Southern University System ("Southern") after thirty-five years of service. Upon retirement, the Louisiana State Employees' Retirement System ("LASERS") began paying plaintiff retirement benefits of $24,487 per month.

In 2009, plaintiff filed suit against Southern for past due wages. The district court ruled that Southern had miscalculated plaintiff's income base by including supplemental pay plaintiff had received from the Southern University Foundation, and determined plaintiff's terminal pay (500 hours of unused leave) and retirement should have been calculated only on his $220,000 annual base salary due from Southern. The court of appeal affirmed on appeal, noting plaintiff "manipulated the system and used his position for his own benefit." *Slaughter v. Bd. of Supervisors of*

*Southern Univ. & Agr. & Mech. Coll.*, 10-1049 (La. App. 1 Cir. 8/2/11), 76 So. 3d 438, *writ denied*, 11-2110 (La. 1/13/12), 77 So. 3d 970 ("*Slaughter I*").

In the meanwhile, on January 22, 2010, Southern sent a letter to LASERS advising it had committed an error in including supplemental funds in plaintiff's earnings. Because the *Slaughter I* suit was ongoing at the time, LASERS filed a concursus proceeding (hereinafter referred to as *"Slaughter II"*) seeking to deposit the disputed amount of plaintiff's benefit in the registry of court pending resolution of the *Slaughter I* litigation. Plaintiff filed an exception of no cause of action. The district court granted the exception and dismissed *Slaughter II* with prejudice. LASERS did not appeal this judgment, and it is now final.

On April 27, 2012, after *Slaughter I* became final, LASERS sent correspondence to plaintiff advising it intended to retroactively reduce his retirement benefit starting June 1, 2012 "due to an error made by Southern University in the reporting of your earnings." Relying on La. R.S. 11:192, LASERS maintained it may adjust benefits and further reduce the corrected benefit to recover overpayment within a reasonable number of months.

Plaintiff then filed the instant suit against LASERS, seeking a writ of mandamus, injunctive relief, and a declaratory judgment confirming LASERS has no authority or ability to reduce his retirement benefits. The petition alleged plaintiff's retirement benefits should be calculated based on the entirety of his earnings over thirty-five years of employment, including salary supplements.

After a bench trial, the district court granted plaintiff's petition for declaratory judgment. Without reaching the merits of plaintiff's arguments regarding the calculation of benefits,[1] the court held LASERS was not entitled to reduce plaintiff's

---

[1] It is noteworthy that although the district court did not resolve the merits, it acknowledged the holding in *Slaughter I*, explaining the court of appeal found "Dr. Slaughter was able himself to

2

retirement benefits because it failed to follow the procedural requirements set forth in La. R.S. 11:407. Specifically, the court found LASERS failed to introduce any evidence indicating it submitted documentation of the administrative error to the LASERS board of trustees as required by La. R.S. 11:407.

LASERS appealed this ruling. Plaintiff answered the appeal, asserting that any attempt by LASERS to reduce his benefits was barred by res judicata and prescription.

On appeal, the court of appeal rejected plaintiff's res judicata and prescription arguments.[2] However, the court affirmed the district court's judgment in favor of plaintiff, finding LASERS failed to prove that it followed the proper procedure before initiating action to reduce and recoup plaintiff's retirement benefits. *Slaughter v. Louisiana State Employees' Retirement System*, 13-2255 (La. App. 1 Cir. 12/4/14) (unpublished). One judge concurred and another judge dissented.

Upon the application of LASERS, we granted certiorari to review the correctness of that decision. *Slaughter v. Louisiana State Employees' Retirement System*, 13-0324 (La. 6/1/15), __ So. 3d __.

## DISCUSSION

As a threshold matter, we note plaintiff's brief to this court asserts that any attempt by LASERS to reduce or recoup the overpayment of benefits is barred under theories of res judicata and prescription. These arguments were rejected by the court

_____

manipulate how those payments were made and to show them as salary and so forth when, in fact, they may not have been."

[2] In its opinion, the court of appeal concluded these exceptions had not been specially pleaded in the district court as required by La. Code Civ. P. art. 927. Nonetheless, citing La. Code Civ. P. art. 2163, the court of appeal reasoned it could consider peremptory exceptions raised for the first time in an appellate court. Therefore, pretermitting the question of whether the exceptions were properly raised in the district court, the court of appeal considered the exceptions on the merits.

3

of appeal. Although plaintiff did not apply for a writ of certiorari in this court seeking review of this portion of the court of appeal's judgment, La. Code Civ. P. art. 2133(B) provides that a party "may assert, in support of the judgment, any argument supported by the record, although he has not appealed, answered the appeal, or applied for supervisory writs." Thus, to the extent plaintiff is arguing the district court reached the correct result in finding LASERS was not entitled to recoup any overpayment (albeit for different reasons), he is entitled to present these arguments. *See Logan v. Louisiana Dock Co., Inc.*, 541 So. 2d 182 (La. 1989); *Roger v. Estate of Moulton*, 513 So. 2d 1126 (La. 1987) (on rehearing).

We first find the court of appeal properly rejected plaintiff's arguments of res judicata. As the court of appeal explained, the 2010 concursus proceeding in *Slaughter II* did not involve the underlying issue of whether or not there was an overpayment of retirement benefits to plaintiff or whether his supplemental pay should have been considered in the calculation of those benefits. Thus, the judgment in *Slaughter II* does not act as a bar to any attempt by LASERS to reduce and recoup an overpayment of benefits to plaintiff.

Similarly, we do not find prescription precludes LASERS from seeking to reduce and recoup any overpayment of benefits to plaintiff. La. R.S. 11:543 provides the right to "collect any benefit paid to an individual to whom the benefit was not due shall prescribe after a period of three years has elapsed from the date of the payment, except in case of fraud." LASERS began paying retirement benefits to plaintiff following his retirement on July 1, 2009. By letter dated April 27, 2012, LASERS notified plaintiff his monthly retirement benefit had been recalculated due to Southern's reporting error. In response to this letter, plaintiff filed the instant suit on

4

May 30, 2012. Thus, the dispute over benefits was raised at the latest by May 30, 2012, within three years of the first benefit payment on July 1, 2009.[3]

On the merits, the narrow question presented for our resolution is whether LASERS failed to follow the proper procedure before initiating action to reduce and recoup plaintiff's retirement benefits. In finding the actions of LASERS were not procedurally proper, the lower courts relied on La. R.S. 11:407, which provides:

> Except as expressly provided otherwise in this Chapter, the director may, upon written documentation that an administrative error has occurred in the administration of this system, which documentation shall be submitted to the board of trustees at the next board meeting, whether such administrative error was committed by this system or otherwise, correct such administrative error and may make all adjustments relative to such correction.

The courts reasoned that LASERS failed to produce evidence of compliance with this provision, as it did not show its director presented documentation of the administrative error to the LASERS board of trustees at the next board meeting after Southern's January 22, 2010 letter was received. In the absence of evidence of compliance with La. R.S. 11:407, the lower courts reasoned LASERS was not entitled to reduce or recoup any overpayment of benefits to plaintiff.

However, LASERS argues the case is governed by La. R.S. 11:192, which provides:

> Whenever any state, parochial, or municipal retirement system or pension fund pays any sum of money or benefits to a retiree, beneficiary, or survivor which is not due them, the board of trustees **shall** adjust the amount payable to the correct amount, and the board is hereby authorized to recover any overpayment by reducing the corrected benefit

---

[3] La. R.S. 11:543 has not been interpreted in the jurisprudence since it was enacted in 2006. It is unclear whether this statute imposes a requirement on LASERS to file suit within three years in order to collect an overpayment, or whether the statute simply operates as a limitation on LASERS's right to recover an overpayment after three years from the date LASERS becomes aware of the error. In any event, we are not required to resolve that question under the instant facts, as issue was joined on May 30, 2012 when plaintiff filed the instant action against LASERS.

5

such that the overpayment will be repaid within a reasonable number of months. The board shall notify the beneficiary, or survivor, of the amount of overpayment in benefits and the amount of the adjustment in benefits, thirty days prior to any reduction from the benefit amount without the overpayment. [emphasis added].

LASERS argues this statute imposes a mandatory duty on it to adjust benefits whenever it learns it has paid an amount not due. LASERS submits this statutory requirement is consistent with the constitutional mandate in La. Const. Art. X, § 29(E)[4] to maintain actuarial soundness of state retirement systems.

The interpretation of any statutory provision starts with the language of the statute itself. *Oubre v. Louisiana Citizens Fair Plan*, 11-0097, p. 11 (La.12/16/11), 79 So.3d 987, 997. When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. La. Civ.Code art. 9; La. R.S. 1:4; *Boudreaux v. Louisiana Dept. of Public Safety & Corrections*, 12-0239, p. 5 (La. 10/16/12), 101 So. 3d 22, 26. Unequivocal provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning. La. Civ.Code art. 11; La. R.S. 1:3; *Id.*

The rules of statutory construction instruct that the meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the

---

[4] La. Const. Art. X, § 29(E) provides:

(E) Actuarial Soundness. (1) The actuarial soundness of state and statewide retirement systems shall be attained and maintained and the legislature shall establish, by law, for each state or statewide retirement system, the particular method of actuarial valuation to be employed for purposes of this Section.

legislature in enacting it. *Allen v. Allen*, 13-2778 (La. 5/7/14), 145 So.3d 341, *citing*

*In re Succession of Boyter*, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1129; *Stogner*

*v. Stogner*, 98-3044, p. 5 (La.7/7/99), 739 So.2d 762, 766. A statute must be applied

and interpreted in a manner that is consistent with logic and the presumed fair

purpose and intention of the legislature in passing it. *Id.* In construing legislation, it

is presumed that the intention of the legislative branch is to achieve a consistent body

of law. *Id.*

Applying these principles of statutory construction, we find La. R.S. 11:407

and La. R.S. 11:192 must be interpreted together in a manner which promotes logic

and consistency. A plain reading of La. R.S. 11:407 indicates the focus of that statute

is on the director of LASERS. The statute is written in the permissive, providing the

director "may" correct an administrative error after submitting documentation of the

error to the LASERS board of trustees. However, nothing in this statute addresses the

authority of the board of trustees to adjust benefits nor does it provide that submission

of documentation to the board of trustees is a prerequisite to action by the board.

In contrast to La. R.S. 11:407, La. R.S. 11:192 specifically addresses the power

of the board of trustees, providing "the board of trustees **shall** adjust the amount

payable to the correct amount, and the board is hereby authorized to recover any

overpayment by reducing the corrected benefit such that the overpayment will be

repaid within a reasonable number of months." [emphasis added]. The mandatory

authority of the board of trustees to adjust benefits under La. R.S. 11:192 is not

dependent on notification by the director under the provisions of La. R.S. 11:407.[5]

Rather, the only requirement for adjustment of benefits under this statute that the

---

[5] The interpretation of La. R.S. 11:407 advanced by plaintiff would create an absurd situation whereby the board of trustees might be forever foreclosed from adjusting a patently erroneous benefit simply because the director fails to submit written documentation of the error to the board at its next meeting. Such an interpretation would force LASERS to pay a benefit not due and would be contrary to the policy of actuarial soundness enshrined in La. Const. Art. X, § 29(E).

7

board of trustees notify the beneficiary of the amount of overpayment in benefits and the amount of the adjustment in benefits, thirty days prior to any reduction.

In the instant case, the LASERS board of trustees, acting through its executive director, initiated the adjustment in benefits. It is undisputed that plaintiff was notified of this adjustment by letter dated thirty days prior to the reduction. Accordingly, all the procedural requirements of La. R.S. 11:192 have been satisfied.

In summary, we find the lower courts erred in finding LASERS failed to prove that it followed the proper procedure before initiating action to reduce and recoup plaintiff's retirement benefits. We therefore reverse this portion of the court of appeal's judgment,[6] and we remand the case to the district court to consider the remaining issues presented in plaintiff's suit.

**DECREE**

For the reasons assigned, the judgment of the court of appeal is reversed insofar as it finds the Louisiana State Employees' Retirement System failed to prove that it followed the proper procedure before initiating action to reduce and recoup plaintiff's retirement benefits. In all other respects, the judgment of the court of appeal is affirmed. The case is remanded to the district court for further proceedings not inconsistent with this opinion. All costs in this court are assessed against plaintiff.

---

[6] As discussed earlier, we find no error in the portion of the court of appeal's judgment denying plaintiff's exceptions of res judicata and prescription. We therefore affirm this portion of the court of appeal's judgment.

8

SUPREME COURT OF LOUISIANA

NO. 2015-C-0324

DR. RALPH SLAUGHTER

VERSUS

LOUISIANA STATE EMPLOYEES' RETIREMENT SYSTEM

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE

**JOHNSON, C.J. CONCURS AND ASSIGNS REASONS**

I concur in the result reached by the majority. I write separately to clearly outline the events leading up to the reduction of Dr. Slaughter's benefits and recoupment of overpayments, as well as the steps taken by LASERS in adjusting those payments, and to emphasize there is no longer a dispute over whether LASERS overpaid benefits to Dr. Slaughter due to an error made by Southern University in calculating his income base, as that issue is now res judicata.

In 2009, a district court ruled that Southern University miscalculated Dr. Slaughter's income base by including supplemental pay he received from the Southern University Foundation. Based on this ruling, Southern University counsel sent a letter, dated January 22, 2010, to notify LASERS that the University incorrectly reported the earnings upon which Dr. Slaughter's benefit payments were calculated. On April 20, 2010, LASERS filed a concursus proceeding in the district court seeking to deposit the disputed funds into the registry of the court until the matter was resolved. The district court dismissed the concursus proceeding on June 17, 2010. LASERS did not appeal this ruling, which then became final.

On August 2, 2011, the First Circuit affirmed the wage claim dispute. This court denied writ on January 13, 2012. *Slaughter v. Bd. of Supervisors of Southern Univ. & Agr. and Mech. Coll.*, 2010-1049 (La. App. 1 Cir. 8/2/11), 76 So.3d 438,

*writ denied*, 11-2110 (La. 1/13/12), 77 So.3d 970. As of January 13, 2012, there was no longer any pending litigation in this matter. The courts determined that Dr. Slaughter's income base was miscalculated, therefore rendering LASERS' benefit payments inaccurate.

On April 27, 2012, LASERS sent a letter to Dr. Slaughter notifying him that it would begin reducing his benefits and would further reduce his payments to recoup all monies that were paid to him, in error, since his retirement in 2009, to be effective June 1, 2012. Dr. Slaughter filed the instant suit on June 30, 2012. Therefore, LASERS reduced Dr. Slaughter's benefits only once all wage disputes were resolved. It is clear that LASERS did not reduce Dr. Slaughter's benefits upon receipt of a letter from the Southern University System claiming an error in calculation, but properly reduced Dr. Slaughter's benefits once the courts definitively ruled that his wages were improperly calculated. Thus, pursuant to La. R.S. 11:192, LASERS was authorized to adjust Dr. Slaughter's benefits and recoup all overpaid funds.