STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 CA 0881

DR. RALPH SLAUGHTER

VERSUS

LOUISIANA STATE EMPLOYEES' RETIREMENT SYSTEM

*Judgment Rendered:*     MAR 2 5 2021

* * * * * * * *

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C612525

The Honorable Donald R. Johnson, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Scott D. Wilson<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellant<br>Dr. Ralph Slaughter |
| Tina Vicari Grant<br>R. Stephen Stark<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellee<br>Louisiana State Employees'<br>Retirement System |

* * * * * * * *

BEFORE: THERIOT, WOLFE, AND HESTER, JJ.

**THERIOT, J.**

Dr. Ralph Slaughter appeals the Nineteenth Judicial District Court's June 15, 2020 judgment dismissing with prejudice his claims for a writ of mandamus, mandatory injunctive relief, and declaratory judgment. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

This matter has a lengthy procedural history. The following is set forth in the Supreme Court's earlier opinion in *Slaughter v. Louisiana State Employees' Retirement System*, 2015-0324 (La. 10/14/15); 180 So.3d 279, 280-81 (per curiam) and in a subsequent appeal, *Slaughter v. Louisiana State Employees' Retirement System*, 2019-0977 (La. App. 1 Cir. 6/1/20); 305 So.3d 358.

In 2009, Dr. Ralph Slaughter ("plaintiff") retired as president of Southern University System ("Southern") after thirty-five years of service. Upon retirement, the Louisiana State Employees' Retirement System ("LASERS") began paying plaintiff retirement benefits of $24,487 per month.

Plaintiff then filed suit against Southern for past due wages. The trial court ruled that Southern had miscalculated plaintiff's income base by including supplemental pay plaintiff had received from the Southern University Foundation, and determined plaintiff's terminal pay (500 hours of unused leave) and retirement should have been calculated on his $220,000 annual base salary due from Southern. The court of appeal affirmed, noting plaintiff "manipulated the system and used his position for his own benefit." See *Slaughter v. Bd. of Supervisors of Southern Univ. & Agr. & Mech. Coll.*, 2010-1049 (La. App. 1 Cir. 8/2/11), 76 So.3d 438, *writ denied*, 11-2110 (La. 1/13/12), 77 So.3d 970 (*"Slaughter I"*).

Meanwhile, on January 22, 2010, Southern sent a letter to LASERS advising it had committed an error by including supplemental funds in plaintiff's earnings. Because the *Slaughter I* suit was ongoing at the time, LASERS filed a concursus

2

proceeding (hereinafter referred to as "*Slaughter II*") seeking to deposit the disputed amount of plaintiff's benefit in the registry of court pending resolution of the *Slaughter I* litigation. Plaintiff filed an exception of no cause of action. The trial court granted the exception and dismissed *Slaughter II* with prejudice. LASERS did not appeal this judgment.

On April 27, 2012, after *Slaughter I* became final, LASERS sent correspondence to plaintiff advising it intended to retroactively reduce his retirement benefit starting June 1, 2012 "due to an error made by Southern University in the reporting of [his] earnings." Relying on La. R.S. 11:192, LASERS maintained it may adjust benefits and further reduce the corrected benefit to recover overpayment within a reasonable number of months.

Plaintiff filed the instant suit against LASERS, seeking a writ of mandamus, injunctive relief, and a declaratory judgment confirming LASERS has no authority or ability to reduce his retirement benefits. The petition alleged plaintiff's retirement benefits should be calculated based on the entirety of his earnings over thirty-five years of employment, including salary supplements.

After a bench trial in 2013, the trial court granted plaintiff's petition for declaratory judgment. Without reaching the merits of plaintiff's arguments regarding the calculation of benefits, the court held LASERS was not entitled to reduce plaintiff's retirement benefits because it failed to follow the procedural requirements set forth in La. R.S. 11:407. Specifically, the court found LASERS failed to introduce any evidence indicating it submitted documentation of the administrative error to the LASERS board of trustees as required by La. R.S. 11:407.

LASERS appealed this ruling. Plaintiff answered the appeal, asserting that any attempt by LASERS to reduce his benefits was barred by res judicata and prescription. On appeal, this court rejected plaintiff's res judicata and prescription

3

arguments. However, this court affirmed the trial court's judgment in favor of plaintiff, finding LASERS failed to prove that it followed the proper procedure before initiating action to reduce and recoup plaintiff's retirement benefits. One judge concurred and another judge dissented. See *Slaughter v. Louisiana State Employees' Retirement System*, 2013-2255 (La. App. 1 Cir. 12/4/14), 2014 WL 6854536 (unpublished) (*"Slaughter III"*).

Upon the application of LASERS, the Louisiana Supreme Court granted certiorari. Subsequently, the Supreme Court in *Slaughter v. Louisiana State Employees' Retirement System*, 2015-0324 (La. 10/14/15); 180 So.3d 279 (per curiam) (*"Slaughter IV"*) found that this court had properly rejected plaintiff's arguments of res judicata and prescription. The *Slaughter IV* Court then stated that as to the merits of this court's decision in *Slaughter III*, "the narrow question presented for our resolution is whether LASERS failed to follow the proper procedure before initiating action to reduce and recoup plaintiff's retirement benefits." *Slaughter IV*, 180 So.3d at 282. The *Slaughter IV* Court concluded that this court and the trial court had erred in finding LASERS failed to prove that it followed the proper procedure before initiating action to reduce and recoup plaintiff's benefits, and reversed this court's judgment on that point. The *Slaughter IV* Court affirmed this court's judgment in all other respects and remanded to the trial court for further proceedings consistent with the opinion. *Slaughter IV*, 180 So.3d at 284.

Following the remand in *Slaughter IV*, plaintiff filed a motion for summary judgment on September 20, 2017, seeking restoration of his retirement benefits in the amount of $24,487.95 per month, as originally calculated, and injunctive relief preventing LASERS from interfering with payment of that amount. Plaintiff argued that although LASERS may have followed the proper procedure to initiate action to reduce and recoup benefits, no reduction or recoupment was appropriate.

Plaintiff maintained that there was no genuine issue of material fact precluding judgment in his favor on this point, and requested that the trial court:

> [R]equire LASERS to restore to Dr. Slaughter all retirement benefits to which he is due, with interest, and award him attorney fees, costs, and other legal, general, and equitable relief, including a declaration that Dr. Slaughter is entitled to retirement benefits in the amount of $24,487.95 per month and injunctive relief preventing LASERS from interfering with payment of this amount in retirement benefits to Dr. Slaughter.

In response, LASERS filed an exception raising the objection of res judicata. The trial court heard plaintiff's motion for summary judgment and LASERS' exception together on January 22, 2018, and executed a written judgment denying both on February 14, 2018.

Thereafter, plaintiff filed a pleading entitled "Motion for Declaratory Judgment" on June 28, 2018, seeking "judgment that all earned compensation, including the salary supplement paid to him by the Southern University System, be found to be a part of his average monthly compensation for purposes of retirement benefits...." Plaintiff filed a memorandum in support of his motion for declaratory judgment, in which he repeated the arguments and requests for relief set forth in his September 20, 2017 motion for summary judgment. The record demonstrates that neither the trial court nor the parties took any action on plaintiff's motion for declaratory judgment.

On September 6, 2018, plaintiff filed a pleading entitled "Plaintiff's Post-Trial Brief on Remand in Support of Motion for Judgment on the Record" ("motion for judgment on the record"). Plaintiff also sought an order from the trial court directing LASERS to show cause "why plaintiff should not be awarded judgment as prayed for in his lawsuit, on remand from the Louisiana Supreme Court, based on the record already generated in this court." The motion for judgment on the record again repeated the arguments and requests for relief made

in plaintiff's September 20, 2017 motion for summary judgment. Plaintiff did not submit any new evidence in support of the motion for judgment on the record.

The trial court heard plaintiff's motion for judgment on the record on February 11, 2019. On March 6, 2019, the trial court executed a written judgment[1] denying the motion for judgment on the record, which provided in pertinent part:

> Considering the pleadings, evidence, the memoranda, and the argument of counsel:
>
> It is ORDERED and ADJUDGED that the plaintiff's Motion for Judgment on the Record be and is hereby DENIED at plaintiff's costs.

Plaintiff appealed the March 6, 2019 judgment. See *Slaughter v. Louisiana State Employees Retirement System*, 2019-0977 (La. App. 1 Cir. 6/1/20); 305 So.3d 358 ("*Slaughter V*"). In *Slaughter V*, this court found that the relief granted or denied by the March 6, 2019 judgment was not evident from the language of the judgment without reference to other documents in the record. This court further found that the March 6, 2019 judgment did not contain appropriate decretal language dismissing any claims or the petition. Accordingly, this court held that the March 6, 2019 judgment was not a valid final judgment and dismissed plaintiff's appeal.[2] *Slaughter V*, 305 So.3d at 363-64.

On June 15, 2020, the trial court rendered judgment denying plaintiff's motions for a writ of mandamus, mandatory injunctive relief, and declaratory judgment, and dismissing with prejudice plaintiff's claims for a writ of mandamus, mandatory injunctive relief, and declaratory judgment. Plaintiff timely appealed.[3]

---

[1] An identical written judgment was executed on March 19, 2019. This court found the March 19, 2019 judgment to be a nullity and without legal effect. See *Slaughter v. Louisiana State Employees Retirement System*, 2019-0977 (La. App. 1 Cir. 6/1/20); 305 So.3d 358, 361-62 n.1.

[2] On September 13, 2019, while the appeal was pending, the trial court issued a "corrected judgment", which stated in pertinent part:

> Considering the pleadings, evidence, memoranda, and argument of counsel,
>
> IT IS ORDERED, ADJUDGED, AND DECREED that final [j]udgment be and it is hereby granted in favor of defendant, LASERS, and against plaintiff, Dr. Slaughter, denying Dr. Slaughter's Motion for Judgment on the Record at Dr. Slaughter's cost.

[3] LASERS argues that the June 15, 2020 judgment is not a final appealable judgment. However, the trial court denied all of plaintiff's claims and the judgment appealed itemized each class of relief. It is well settled that a final

## ASSIGNMENTS OF ERROR

Plaintiff assigns the following as error:

(1) Plaintiff did not and could not have manipulated his pay process.

(2) The trial court erred as a matter of law when it failed to rule that "earned compensation" as defined in La. R.S. 11:403(10) included his salary supplements.

(3) The trial court committed reversible error in finding that there was any overpayment to plaintiff of retirement benefits, and in finding that even a false or inaccurate report of overpayment triggered a mandatory obligation for LASERS to reduce plaintiff's retirement benefits and recoup alleged overpayments.

(4) The trial court committed reversible error in finding that any administrative error occurred during a reporting period that was during the periods in which plaintiff received additional pay; there was no evidence of such.

(5) The trial court committed reversible error in failing to find that plaintiff's monthly rate for retirement benefit calculation purposes should be based on $39,000 monthly.

## STANDARD OF REVIEW

A court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La. 1993). Questions of law, including the interpretation of a statute, are subject to *de novo* review. See *Benjamin v. Zeichner*, 2012-1763 (La. 4/5/13); 113 So.3d 197, 201; see also *Tanana v. Tanana*, 2012-1013 (La. App. 1 Cir. 5/31/13); 140 So.3d 738, 742.

---

judgment must be precise, definite, and certain. A final judgment must also contain decretal language. Generally, it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. The specific relief granted should be determinable from the judgment without reference to an extrinsic source such as pleadings or reasons for judgment. *Conley v. Plantation Management Co., L.L.C.*, 2012-1510 (La. App. 1 Cir. 5/6/13); 117 So.3d 542, 546-47. The June 15, 2020 judgment satisfies those requirements and is thus a final appealable judgment.

7

## DISCUSSION

Assignment of Error #1

In his first assignment of error, plaintiff argues that he did not and could not have manipulated his pay process. This argument is in response to the Supreme Court's statement in *Slaughter IV* that the trial court had not reached the merits of plaintiff's arguments regarding the calculation of benefits, but had acknowledged the court of appeal's holding in *Slaughter I* that plaintiff was able to manipulate how certain payments were made and show them as salary when they may not have been. See *Slaughter IV*, 180 So.3d at 281 n.1.

Whether plaintiff did or did not manipulate his pay process is not before this court. We will not disturb this court's factual findings in a prior case. This assignment of error lacks merit.

Assignment of Error #2

In his second assignment of error, Plaintiff argues that the trial court erred as a matter of law when it failed to rule that "earned compensation" as defined in La. R.S. 11:403(10) included his salary supplements. LASERS argues that the issue of whether plaintiff's supplemental pay from the Southern University System Foundation should have been included in the calculation of his retirement benefits was the basis of plaintiff's initial suit against LASERS. According to LASERS, judgment has been rendered in its favor several times since the original filing in 2012. Thus, LASERS argues that the matter is barred by res judicata.

LASERS argument is essentially a law-of-the-case argument. The law-of-the-case doctrine embodies the principle that an appellate court generally does not revisit its own rulings of law on a subsequent appeal in the same case. *State ex rel. Div. of Admin., Office of Risk Management v. National Union Fire Ins. Co. of Louisiana*, 2013-0375 (La. App. 1 Cir. 1/8/14); 146 So.3d 556, 562. Although the issue of whether LASERS followed the applicable procedural requirements was

8

decided by the Supreme Court in *Slaughter IV*, the merits of plaintiff's argument in his lawsuit against LASERS have not been addressed by this court. Accordingly, the law-of-the-case doctrine is not applicable to this issue.[4]

We now turn to plaintiff's argument that the trial court erred as a matter of law when it failed to rule that "earned compensation" as defined in La. R.S. 11:403(10) included his salary supplements. Louisiana Revised Statutes 11:444 governs the computation of retirement benefits and states in pertinent part:

> A.(1)(a)(i) A member who retires effective on or after July 1, 1973, shall receive a maximum retirement allowance equal to two and one-half percent of <u>average compensation, as determined under R.S. 11:231,</u> for every year of creditable service, plus three hundred dollars. (Emphasis added.)

La. R.S. 11:231(B) provides:

> For purposes of retirement benefit computation, <u>average compensation, or its equivalent, shall be based on the thirty-six highest successive months of employment, or on the highest thirty-six successive joined months of employment where interruption of service occurred.</u> The earnings to be considered for the thirteenth through the twenty-fourth month shall not exceed one hundred twenty-five percent of the earnings of the first through the twelfth month. The earnings to be considered for the final twelve months shall not exceed one hundred twenty-five percent of the earnings of the thirteenth through the twenty-fourth month. <u>Nothing in this Subsection, however, shall change the method of determining the amount of earned compensation received.</u>[5] (Emphasis added.)

Further, La. R.S. 11:403(5)(a)(i) states:

> "<u>Average compensation</u>", for a member whose first employment making him eligible for membership in the system began on or before June 30, 2006, and for any person who receives an additional benefit pursuant to R.S. 11:444(A)(2)(b) or (c), 557, 582, or 602 or R.S. 24:36 whose first employment making him eligible for membership in one of the state systems occurred on or before December 31, 2010, <u>means the average annual earned compensation</u> of a state employee for the thirty-six highest months of successive employment, or for the

---

[4] We further note that the *Slaughter I* suit was between plaintiff and the Board of Supervisors of Southern University, not plaintiff and LASERS. Thus, this matter is not barred by res judicata as a result of *Slaughter I*. *Burguieres v. Pollingue*, 2002-1385 (La. 2/25/03); 843 So.2d 1049, 1053 (res judicata bars a second action when all of the following are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) *the parties are the same*; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation).

[5] Louisiana Revised Statutes 11:231 was amended effective January 1, 2011, 2010 La. Acts 992, § 1, but the text of La. R.S. 11:231(B) was not substantially changed.

highest thirty-six successive joined months of employment where interruption of service occurred; however, average compensation for part-time employees who do not use thirty-six months of full-time employment for average compensation purposes shall be based on the base pay the part-time employee would have received had he been employed on a full-time basis. (Emphasis added.)

Earned compensation is defined by La. R.S. 11:403(10), which states:

"Earned Compensation" means the base pay earned by an employee for a given pay period as reported to the system on a monthly basis by the agency which shall include the cash value of any emolument of office in the form of paid compensation in lieu of salary which is subject to federal and state payroll taxes and includes the full amount earned by an employee, overtime, and per diem earned by an employee of the House of Representatives, the Senate, or an agency of the legislature, and expense allowances and per diem paid to members of the legislature, the clerk, or sergeant at arms of the House of Representatives and president and secretary or sergeant at arms of the Senate. (Emphasis added.)

Louisiana Revised Statutes 11:403(6) defines "base pay," stating:

"Base pay" means prescribed compensation for a specific position on a full-time basis, but does not include overtime, per diem, differential pay, payment in kind, premium pay, or any other allowance for expense authorized and incurred as an incident to employment, except supplemental pay for certain members as provided by Article X, Section 10(A)(1) of the Louisiana Constitution of 1974.[6] Employees who work biweekly eighty-hour schedules shall have their earned compensation for such regularly scheduled work considered as part of base pay even if some of these hours are defined as overtime for the purpose of the Fair Labor Standards Act. (Emphasis added; footnote added.)

This court addressed these statutes in plaintiff's lawsuit against the Board of Supervisors of Southern University.[7] See Slaughter I, 76 So.3d at 453-54. We agree with this court's findings in that case. Relevantly, this court summarized:

---

[6] Article X, Section 10(A)(1) of the Louisiana Constitution provides that, in certain circumstances, the legislature may supplement the uniform pay plans for sworn, commissioned law enforcement officers employed by a bona fide police agency of the state or its political subdivisions and for fire protection officers employed by a port authority.

[7] In Slaughter I, the question of whether plaintiff's supplemental pay should be included in plaintiff's retirement benefit calculation arose, despite not being directly at issue. This court wrote in Slaughter I, 76 So.3d at 453:

Herein, the issue is not one of the calculation of LASERS benefits or an interpretation of the retirement statutes for purposes of determining those benefits. Our analysis on the issue of determining the amount due (and the hourly rate) is limited solely to the facts and the issues in this case and does not address Dr. Slaughter's retirement benefit calculation. Nevertheless, because there is a lack of jurisprudence addressing the method of calculating an amount due under the Wage Payment Law, the parties have presented argument based on the meaning of certain terms, such as compensation, in Louisiana's retirement statutes.

10

Retirement provisions in Title 11 of the Revised Statutes, applicable to LASERS and other retirement systems, also provide that retirement benefits are based on "average earned compensation." The "earned compensation" as defined in La. R.S. 11:403(10) means "the base pay earned by an employee for a given pay period as reported to the system on a monthly basis by the agency which shall include the cash value of any emolument of office in the form of paid compensation in lieu of salary which is subject to federal and state payroll taxes." . . . As defined in La. R.S. 11:403(6), "base pay" means, "prescribed compensation for a specific position on a full-time basis, but does not include overtime, per diem, differential pay, payment in kind, premium pay, or any other allowance for expense authorized and incurred as an incident to employment." The definition of base pay includes an exception for supplemental pay of sworn, commissioned law enforcement and fire protection officers, from any available funds of the state. *See* La. Const. art. X, § 10(A)(1)(b). From our reading of these particular retirement statutes, it is clear that the legislature did not intend for supplemental pay or expense allowances to be included in the calculation of compensation for employees who were not law enforcement officers or firefighters and did not fall within the exception. (Footnote omitted.)

Thus, we find that the trial court correctly concluded that "earned compensation" as defined in La. R.S. 11:403(10) does not include plaintiff's salary supplements. This assignment of error lacks merit.

Assignment of Error #3

In his third assignment of error, plaintiff argues that the trial court committed reversible error in finding that there was any overpayment to plaintiff of retirement benefits, and in finding that even a false or inaccurate report of overpayment triggered a mandatory obligation for LASERS to reduce plaintiff's retirement benefits and recoup alleged overpayments.

On January 22, 2010, Tracie Woods, Executive Counsel of Southern, sent a letter to Cynthia Rougeou, Executive Director of LASERS. The letter stated in relevant part:

It has come to our attention from court testimony in December, 2009, that Southern University – Baton Rouge miscalculated the retirement income basis for Dr. Ralph Slaughter.

We accidentally included special/supplemental pay from the SU Foundation which our research indicates; we should not have included in his retirement calculation.

11

On December 3, 2009, Judge Kelly, 19th Judicial Court, ruled the retirement should have been calculated on the 220k base salary and should not have included any supplemental pay. It appears we provided an inflated salary amount to LASERS. Southern University asks that LASERS recalculates the retirement benefit on the 220k base salary with any additional calculations that may be required.

On April 27, 2012, after *Slaughter I* had concluded,[8] LASERS sent a letter to plaintiff stating the following:

> Your monthly retirement benefit has been recalculated due to an error made by Southern University in the reporting of your earnings. Your adjusted benefit is $17,909.19. As a result of this recalculation, there is an amount due LASERS by you for the overpayment of benefits since your retirement in 2009. The total amount of overpayment is $227,651.07. There is a credit due to you for the amount of contributions you made on the erroneous earnings in the amount of $30,000.01. We have applied the credit to the amount due LASERS and this leaves a balance of $197,651.06 remaining due and owing to LASERS.
>
> By law, specifically La. R.S. 11:192, LASERS may adjust your benefit and may further reduce the corrected benefit to recover the overpayment within a reasonable number of months. We plan to recover the balance over a 60 month period. As a result, your corrected benefit will be reduced in the amount of $3,294.18. Thus, your monthly gross benefit will be $14,615.91 for 60 months. At the expiration of 60 months, your gross monthly benefit will be $17,909.19. The correct/reduced benefit will begin June 1, 2012.

As discussed in our analysis of plaintiff's second assignment of error, the trial court correctly concluded that "earned compensation" as defined in La. R.S. 11:403(10) does not include plaintiff's salary supplements. Thus, Southern's inclusion of plaintiff's salary supplements was an error that caused an overpayment. This assignment of error lacks merit.

Assignment of Error #4

In his fourth assignment of error, plaintiff argues that the trial court committed reversible error in finding that any administrative error occurred during a reporting period that was during the periods in which plaintiff received additional

---

[8] Cynthia Rougeou testified at the 2013 trial that, out of an abundance of caution, LASERS waited over two years after receiving Ms. Woods' letter before reducing plaintiff's benefits in case LASERS was brought into plaintiff's ongoing litigation with Southern.

pay; there was no evidence of such. Plaintiff refers to a May 11, 2012 letter sent from Wretha Carpenter, Deputy Fiscal Officer of LASERS, to Rosie Taylor of Southern. The May 11, 2012 letter informs Ms. Taylor that plaintiff's retirement benefit was recently recalculated due to an error in the reporting of his earnings by Southern. According to the letter, the error occurred during the reporting periods of February 2005 through July 2007. Plaintiff argues that he received the supplemental pay at issue from July 1, 2007 until June 30, 2009, not during the reporting periods of February 2005 through July 2007. Thus, he argues that any error that occurred during the reporting periods of February 2005 through July 2007 should not affect his retirement benefits.

Cynthia Rougeou testified at the 2013 trial that she was only aware of one administrative error with respect to plaintiff's benefit calculation. She does not know why the May 11, 2012 letter specifically referenced the reporting periods of February 2005 through July 2007, nor does she know whether Wretha Carpenter's letter provided the correct dates.

Tracie Woods testified that she believed that the overpayment was discovered while Southern was looking at payroll records during the litigation of plaintiff's 2009 wage claim case. She did not recall the particular dates of the administrative error.

Plaintiff's employment contract with Southern commenced on July 1, 2007 and ended June 30, 2009. He received a base salary of $220,000 per annum, a vehicle allowance, a housing allowance unless living on the university's campus, and a salary supplement from Southern University System Foundation funds in the amount of $200,000 per year (such salary supplement being contingent upon the funds being provided by the foundation.) Thus, it is clear from the record that the salary supplement at issue occurred from July 1, 2007 until June 30, 2009. The administrative error was the inclusion of that salary supplement in the calculation

13

of plaintiff's retirement benefits. Considering plaintiff's employment contract and the testimony at trial, the dates of February 2006 through July 2007 in Wretha Carpenter's letter were likely inaccurate. Regardless, there is no doubt that the salary supplement from July 1, 2007 through June 30, 2009 should not have been included in the calculation of plaintiff's retirement benefits. This assignment of error lacks merit.

Assignment of Error #5

In his fifth assignment of error, plaintiff argues that the trial court committed reversible error in failing to find that plaintiff's monthly rate for retirement benefit calculation purposes should be based on the $39,000 he received monthly. However, the $39,000 includes his supplemental pay which, as explained in our analysis of his second assignment of error, should not have been included in the calculation of his retirement benefits. This assignment of error lacks merit.

**DECREE**

For the above and foregoing reasons, the Nineteenth Judicial District Court's June 15, 2020 judgment dismissing with prejudice Dr. Ralph Slaughter's claims for a writ of mandamus, mandatory injunctive relief, and declaratory judgment is affirmed. Costs are assessed to Appellant, Dr. Ralph Slaughter.

**AFFIRMED.**